ORIGINAL

Approved: _____
          Gillian Grossman
          Assistant United States Attorney

Before:   HONORABLE JUDITH C. McCARTHY
          United States Magistrate Judge
          Southern District of New York

17 mag 1972

- - - - - - - - - - - - - - - x
                              :   SEALED COMPLAINT
UNITED STATES OF AMERICA      :
      - v. -                  :   Violation of
                              :   21 U.S.C. § 846
                              :
                              :   COUNTY OF OFFENSE:
CHUKWUEMEKA OKPARAEKE,        :   ORANGE
    a/k/a "Emeka,"            :
                              :
             Defendant.       :
                              :
- - - - - - - - - - - - - - - x


SOUTHERN DISTRICT OF NEW YORK, ss.:

   BRAD RUGGIERI, being duly sworn, deposes and charges as follows:

                          COUNT ONE

   1.   From at least in or about October 2016 up to and including in or about March 2017, in the Southern District of New York and elsewhere, CHUKWUEMEKA OKPARAEKE, a/k/a "Emeka," the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

   2.   It was a part and an object of the conspiracy that CHUKWUEMEKA OKPARAEKE, a/k/a "Emeka," the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substance that CHUKWUEMEKA OKPARAEKE, a/k/a "Emeka," the defendant, and others known and unknown conspired to distribute and possess with the intent to distribute was 100 grams and more of mixtures and substances containing a detectable amount of an analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]propanamide, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4. I am a Postal Inspector with the United States Postal Inspection Service ("USPIS"), assigned to the Prohibited Mail-Narcotics Team, and I have been involved in the investigation of the above-described offense. I am familiar with the facts and circumstances set forth below from my personal participation in the investigation, including my review of pertinent reports, documents, and other evidence, and from my conversations with fellow law enforcement officers. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Background of the Investigation

5. Between at least in or about October 2016 up to and including March 2017, several law enforcement agencies – including USPIS; Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI"); Customs and Border Protection ("CBP"); and the Fairfax County Police Department ("Fairfax County PD") in the State of Virginia – have been investigating activities related to the trafficking of various fentanyl analogues by an online vendor operating under the name "Fentmaster."

6. Fentmaster operates through a "darknet" website known as AlphaBay Marketplace. Darknet websites are online black markets for the sale of illegal products (e.g., drugs, guns, fake passports, and child pornography). These websites can only be accessed through The Onion Router (TOR), a software program originally developed by the U.S. Navy that allows users to mask their identities through a process of encryption and decryption between numerous peer-to-peer connections.

7. Based on my conversations with other law enforcement officers, including officers with the Fairfax County PD, I know that between in or about October 2016 and in or about March 2017, officers with the Fairfax County PD, operating in an undercover capacity, placed seven orders for various analogues of fentanyl from Fentmaster. After placing the orders, the Fairfax County PD received packages in the mail containing substances that tested positive for analogues of fentanyl.

<u>The November 2016 Packages</u>

8. Based on my training and experience, my personal involvement in this investigation, my conversations with other law enforcement officers, including other USPIS Inspectors, and my review of documents and other evidence, I have learned the following:

    a. In or about November 2016, a United States Postal Service ("USPS") employee ("USPS Employee-1") contacted the USPIS to report a concern regarding a suspicious customer ("the Customer").

    b. USPS Employee-1 reported that he had learned from other USPS employees that on multiple occasions, USPS employees had observed the Customer depositing a large volume of USPS envelopes in collection bins at the front of post offices in the Middletown area. While depositing the envelopes, the Customer had worn latex-dipped gloves.

    c. Based on my training and experience, individuals using the USPS to mail envelopes containing contraband, including controlled substances, sometimes prefer to mail the envelopes by depositing them in bins at the front of the post office, because that area of a post office is generally not captured on security cameras. In addition, I know that individuals using the USPS for criminal purposes will often wear gloves while handling packages containing contraband in order to avoid law enforcement detection.

    d. USPS Employee-1 reported that USPS employees had observed the Customer sending packages at multiple post offices in the Middletown area, and that the Customer had purchased bulk quantities of USPS priority mail stamps.

    e. USPS Employee-1 reported that during one of the Customer's transactions at a post office, a USPS employee viewed the Customer's New York State driver's license. The name on the license was "Chukwuemeka Okparaeke."

   f. USPS Employee-1 reported that a USPS employee had observed the Customer driving a white Honda Accord bearing New York State license plate number "HAV 7230" (the "Vehicle").

  9. Based on my review of New York State Department of Motor Vehicle ("DMV") records, I have learned that the Vehicle is registered to CHUKWUEMEKA OKPARAEKE, a/k/a "Emeka," the defendant.

  10. Based on my review of an image of the Customer identified by USPS Employee-1 that was captured on a security camera at a post office in the Middletown area, as well as my personal observations of CHUKWUEMEKA OKPARAEKE, a/k/a "Emeka," the defendant, *see infra* ¶ 16, I believe that the Customer is OKPARAEKE.

  11. Based on my personal involvement in this investigation, my conversations with other law enforcement officers, including other USPIS Inspectors, and my review of documents and other evidence, I have learned the following:

   a. As a result of the information reported by USPS Employee-1, the USPS set aside approximately 40 USPS envelopes (the "40 Envelopes") that had been dropped off by OKPARAEKE on one occasion in or about November 2016 for further screening by USPIS.

   b. The 40 Envelopes were addressed to various addresses throughout the United States, but each of the 40 Envelopes had a return address of "Middletown Sweets, 110 Crystal Run Road, Middletown, New York 10941."

   c. Based on my review of law enforcement databases, I have learned that an entity called "Middletown Sweets" does not exist at the return address. Based on my training and experience, individuals using the USPS for the shipment of contraband, including controlled substances, often use fictitious return addresses in an attempt to avoid law enforcement detection.

   d. Each of the 40 Envelopes bore a $6.45 "La Cueva del Indio" USPS Priority Mail stamp.

  12. Based on my personal involvement in this investigation, my conversations with other law enforcement officers, including officers with the Fairfax County PD, and my review of documents and other evidence, I have learned the following:

a. In or about early November 2016, officers with the Fairfax County PD placed an undercover order for a fentanyl analog from Fentmaster on AlphaBay Market.

b. The Fairfax County PD officers subsequently received a USPS envelope ("Suspect Parcel-1") containing a substance of approximately several grams that tested positive for the fentanyl analog that the Fairfax County PD officers had ordered from Fentmaster.

c. The return address on Suspect Parcel-1 was "Middletown Sweets, 110 Crystal Run Road, Middletown, New York 10941." The recipient address on Suspect Parcel-1 matched the address provided in the Fairfax County PD officers' undercover order to Fentmaster on AlphaBay Marketplace.

d. Suspect Parcel-1 bore a $6.45 "La Cueva del Indio" USPS Priority Mail stamp.

e. A review of USPS records revealed that Suspect Parcel-1 was mailed from in or around Orange County, New York on or about November 9, 2016.

f. USPS Employee-1, who had reported CHUKWUEMEKA OKPARAEKE, a/k/a "Emeka," the defendant, as a suspicious Customer in or about November 2016, see supra ¶ 8, reported that OKPARAEKE was observed by a USPS employee mailing out envelopes from a post office located in or around Middletown, in Orange County, New York on or about November 9, 2016.

g. A review of USPS databases revealed that on or about September 9, 2016, a credit card in OKPARAEKE's name was used to purchase $129 worth of $6.45 "La Cueva del Indio" Priority Mail Stamps.

h. Based on the numerous similarities between Suspect Parcel-1 and the 40 Envelopes deposited at a Middletown area post office by OKPARAEKE in November 2016, including identical fictitious return addresses, stamps, and USPS envelopes; the fact that OKPARAEKE was observed mailing parcels in or around Orange County, New York on the same day that Suspect Parcel-1's tracking information shows that it was shipped from in or around Orange County, New York; and the fact that the recipient address on Suspect Parcel-1 matched the undercover address used by the Fairfax County PD Officers to order a fentanyl analog from Fentmaster, I believe that OKPARAEKE mailed Suspect Parcel-1.

13. Based on conversations with other law enforcement officers, including other USPIS Inspectors, and a review of records maintained by the USPS, I have learned the following:

    a. The USPS Fulfillment Center has an active account on file registered to "Emeka Okparaeke" (the "Account"). The address information on file for the Account is a Middletown, New York address (the "Middletown Address").

    b. Between on or about August 20, 2016, and January 24, 2017, 14 stamp orders were placed on the Account for amounts ranging between approximately $75.75 and approximately $7,599.25 worth of stamps. During this time period, more than $3,200 of "La Cueva del Indio" Priority Mail Stamps were purchased through the Account. Based on my training and experience, individuals using the USPS for the shipment of contraband, including controlled substances, often used USPS stamps to pay for postage in an attempt to avoid law enforcement detection, as the individual stamps are not traceable.

    c. The stamp orders were placed through the USPS website from an Internet Protocol address (the "IP" Address).

14. Based on my review of records maintained by TimeWarner Cable, I have learned that the IP Address is registered to "Emeka Okparaeke," at the Middletown Address.

### The January 2017 Packages

15. Based on my personal involvement in this investigation, my review of reports and documents, and my conversations with other law enforcement officers, including agents with HSI and CBP, I have learned the following:

    a. In or about January 2017, two packages ("Package-1" and "Package-2") were intercepted by CBP agents at John F. Kennedy Airport during a random, routine screening. A CBP Agent ("CPB Agent-1") opened Package-1 and Package-2 and discovered that they each contained a little over 1 kilogram of a substance that field-tested positive for an analogue of fentanyl.

    b. The sender address on both Package-1 and Package-2 indicated that the packages had been sent from Hong Kong.

    c. The recipient address on both Package-1 and Package-2 indicated that the package was sent to an individual named "Emeka Okparaeke" at a United Parcel Service ("UPS") store located in Middletown, New York.

        d.    CPB Agent-1 informed an HSI Agent ("HSI Agent-1") of the presence of a fentanyl analogue in the packages, who in turn informed me. Law enforcement replaced Package-1 and Package-2 with sham packages containing a filler material designed to mimic the weight and density of Package-1 and Package-2 ("Package-3" and "Package 4").

        e.    On or about January 31, 2017, an individual who identified himself by the last name "Okparaeke" called the post office located in Middletown, New York (the "Middletown Post Office") and inquired about the status of Package-1 based on USPS tracking information that indicated Package-1 had arrived at the Middletown Post Office. "Okparaeke" provided a phone number at which he could be reached.

        f.    On or about February 1, 2017, I brought Package-3 and Package-4 to the Middletown Post Office. An employee of the Middletown Post Office, acting at my direction, contacted "Okparaeke" at the phone number he had provided and left a voicemail informing him that Package-1 had arrived at the Middletown Post Office. An individual who identified himself as "Okparaeke" then called the Middletown Post Office and stated, in sum and substance, that he would retrieve Package-1 that evening.

        g.    On or about the evening of February 1, 2017, I and other law enforcement officers conducting surveillance observed CHUKWUEMEKA OKPARAEKE, a/k/a "Emeka," the defendant, enter the Middletown Post Office. OKPARAEKE provided the tracking number assigned to Package-1 to a USPS clerk. Acting at my direction, a USPIS Inspector acting in an undercover capacity ("UC-1") then gave OKPARAEKE Package-3. OKPARAEKE signed for Package-3.

        h.    UC-1 informed OKPARAEKE that a second package had arrived for him and was also at the Middletown Post Office, and showed him Package-4, which displayed the tracking information for Package-2. OKPARAEKE confirmed that the package also belonged to him. UC-1 then gave OKPARAEKE Package-4.

    16.    After CHUKWUEMEKA OKPARAEKE, a/k/a "Emeka," the defendant, exited the Middletown Post Office, I and other law enforcement officers intercepted him in the parking lot and drove him to the Middletown police station. After receiving *Miranda* warnings, OKPARAEKE agreed to speak to me and an HSI agent ("HSI Agent-1"). OKPARAEKE made the following statements, among others, in sum and substance:

        a.    OKPARAEKE stated that he did not know the contents of Package-1 and Package-2.

        b.    OKPARAEKE stated that he is paid by an anonymous individual to receive packages and to forward them on to a recipient named "Xavier Johnson."

        c.    During the interview, I observed OKPARAEKE's Samsung Galaxy S5 cellphone. OKPARAEKE confirmed, in sum and substance, that the cellphone belonged to him.

17.    During the interview, HSI Agent-1 and I informed CHUKWUEMEKA OKPARAEKE, a/k/a "Emeka," the defendant, in sum and substance, that Package-1 and Package-2 had contained dangerous contraband.

<u>The March 2017 Packages</u>

18.    Based on my review of reports and documents, and my conversations with other law enforcement officers, including officers with the Fairfax County PD, I have learned the following:

        a.    On or about March 5, 2017, a detective with the Fairfax County PD (the "Detective") made an undercover purchase for 100 grams of an analogue of fentanyl from Fentmaster on the AlphaBay Marketplace (the "March 5 U/C Purchase").

        b.    On or about March 7, 2017, the Detective conducted surveillance of CHUKWUEMEKA OKPARAEKE, a/k/a "Emeka," the defendant.

        c.    The Detective observed OKPARAEKE's Vehicle parked near a townhouse on Kearny Avenue in Kearny, New Jersey. At approximately 1:36 p.m., the Detective observed OKPARAEKE, who was wearing a black jacket, walk toward the Vehicle with two white plastic bags in his hand. OKPARAEKE placed one bag in a trash receptacle, then walked around his car, looked in multiple directions, and placed the second plastic bag (the "Trash Bag") in another trash receptacle.

        d.    At approximately 1:40 p.m., the Detective observed OKPARAEKE exit the townhouse holding two large USPS plastic bins with what appeared to be parcels inside. OKPARAEKE put both bins in the trunk of his Vehicle. OKPARAEKE then got into the Vehicle and drove away from the area.

    e. After OKPARAEKE had left the area, the Detective removed the Trash Bag from the trash receptacle and secured it in his car.

    f. The Detective then drove to the post office located in Harrison, New Jersey, approximately a mile and a half away. The Detective met with a USPS employee, who asked the post office clerks, in sum and substance, whether anyone had recently turned in a large amount of mail. A clerk identified two large bins of mail and stated, in sum and substance, that a man wearing a black jacket (the "Man") had entered the post office and placed one of the bins on the counter. The Man had then exited the post office and returned with a second bin of outgoing mail. The Detective observed the bins to be the same size and shape as the bins he had seen OKPARAEKE carrying earlier that day.

    g. The Detective observed a total of 79 packages in the two bins. One of the 79 packages was addressed to the name and address that the Detective had provided to Fentmaster when he made the March 5 U/C Purchase ("Suspect Parcel-2").

    h. All 79 packages had the same return address: North Jersey Plastics Co., 115 Franklin Turnpike, Mahwah, New Jersey, 07430 (the "New Jersey Return Address"). The New Jersey Return Address had also appeared on an earlier package containing a fentanyl analogue that the Fairfax County PD had ordered from Fentmaster.

    i. Based on my review of law enforcement databases, I have learned that an entity called "North Jersey Plastics Co." does not exist at the New Jersey Return Address.

    j. On or about March 8, 2017, Suspect Parcel-2 was delivered to the address the Detective had provided to Fentmaster in the March 5 U/C Purchase.

    k. Suspect Parcel-2 contained approximately 101 grams of a fine, white powder that test positive for the fentanyl analogue ordered from Fentmaster.

    l. On or about March 8, 2017, the Detective examined the Trash Bag that the Detective had observed OKPARAEKE discard the day before. It contained a large, clear, plastic re-sealable bag, the inside of which was covered in a fine white powder.

m. The Trash Bag also contained backing for mailing labels; two sets of used rubber gloves (one of which had a mailing label attached on which the New Jersey Return Address was written); digital scales; and backing from stamps. Based on my training and experience, I know that materials including rubber gloves and digital scales are often used in breaking down a controlled substance and repackaging it into smaller quantities intended for redistribution.

19. Based on my review of a report from a Virginia state forensic laboratory, I know that the white powder recovered from the plastic bag inside the Trash Bag is the same fentanyl analogue that the Fairfax County PD ordered from Fentmaster in the March 5 U/C Purchase.

### The Cellphone Search Warrant

20. On or about January 23, 2017, the Honorable Paul E. Davison, United States Magistrate Judge in the Southern District of New York, issued a search and seizure warrant for the Samsung Galaxy S5 cellphone (the "Cellphone") belonging to CHUKWUEMEKA OKPARAEKE, a/k/a "Emeka," the defendant, which I had observed during my interview of OKPARAEKE on or about February 1, 2017. *See supra* ¶ 16(c). I and other law enforcement officers executed the search warrant on or about February 7, 2017 – approximately six days after HSI Agent-1 and I interviewed OKPARAEKE at the Middletown police station.

21. Based on my training and experience, my review of the search warrant results for the cellphone belonging to CHUKWUEMEKA OKPARAEKE, a/k/a "Emeka," the defendant; my conversations with other law enforcement officers; and my review of reports and documents, I have learned the following:

a. OKPARAEKE's Cellphone contained several applications that I know, from my training and experience, are commonly used by individuals engaged in darknet narcotics distribution, including "PIA VPN," "Bitcoin Checker," and "Orbot: Proxy with Tor." PIA VPN masks a device's IP address; Orbot: Proxy with Tor, among other things, encrypts a device's internet traffic; and Bitcoin Checker allows users to monitor a virtual currency often used in narcotics transactions on the darknet. In addition, the Cellphone contained several applications that allows users to exchange encrypted messages.

b. On or about January 30, 2017, OKPARAEKE received

an email confirmation on his Cellphone from the online vendor Amazon.com for an order purchasing 1,000 two-milliliter zip-lock bags, to be delivered at the Middletown Address. Based on my training and experience, I know that this quantity and size of zip-lock bag is commonly used for the packaging of controlled substances for redistribution.

c. On or about February 4, 2017, a texting application called "TextNow" was downloaded to the Cellphone. A number of messages were sent from OKPARAEKE's Cellphone using "TextNow" to an unknown individual. In the messages, the sender asked, in sum and substance, whether the unknown individual would be willing to serve as the recipient for about 20 packages a month in exchange for payment. Based on these messages and the fact that OKPARAEKE had learned approximately three days earlier that his UPS store box was known to law enforcement, see *supra* ¶ 16, I believe that OKPARAEKE was attempting to recruit an individual to receive shipments of controlled substances on his behalf.

### "BMoreProduct1"

22. Based on my review of the search warrant results for the Cellphone belonging to CHUKWUEMEKA OKPARAEKE, a/k/a "Emeka," the defendant, I have learned from the Cellphone's browsing history that OKPARAEKE frequently visited the website Reddit.com, which, among other things, allows users to post comments and engage in discussion forums. In addition, the Cellphone's browser reflected that OKPARAEKE had recently visited a Reddit.com page on which a user posting under the handle "bmoreproduct1" had written a short story entitled "Darknetmarkets short story: Part 1."

23. Based on my review of the Reddit posts by "bmoreproduct1," I am aware that "bmoreproduct1" posted on Reddit from in or about August 2016 up to and including January 2017. For the reasons set forth below, I believe that "bmoreproduct1" is likely OKPARAEKE's Reddit handle.

a. The user "bmoreproduct1" posted a multi-part story entitled "Darknetmarkets short story" (the "Story") about a former doctor who became a darknet fentanyl distributor in the New Jersey area and used the USPS to traffic controlled substances. The Story discusses several tactics used by the main character to evade law enforcement detection in his fentanyl trafficking activities that are also used by OKPARAEKE, including the following:

                i.    The Story describes how the main character uses a VPN application to check online tracking information for controlled substance shipments sent through the USPS in order to mask his IP address. The "PIA VPN" application was found on OKPARAEKE's Cellphone. *See supra* ¶ 21a.

               ii.    The Story describes how the main character wears latex gloves while handling packages containing controlled substances. Latex gloves, along with residue of a fentanyl analogue and packaging materials, were recovered from the Trash Bag that OKPARAEKE discarded in Kearny, New Jersey. *See supra* ¶¶ 18(l), 18(m), 19.

              iii.   The Story describes how the main character uses false return addresses to ship controlled substances through the USPS. OKPARAEKE shipped controlled substances through the USPS using false return addresses. *See supra* ¶¶ 11(c), 18(i).

        b.    The Story describes how the main character works with his brother "Xavier" to distribute narcotics. In addition, in a Reddit comment, "bmoreproduct1" references an individual named Michah Xavier Johnson. When HSI Agent-1 and I interviewed OKPARAEKE in February 2017, OKPARAEKE stated, in sum and substance, that he is paid to forward the packages he receives to an individual named "Xavier Johnson." *See supra* ¶ 16(b).

        c.    The Story describes how the main character is a former doctor. In addition, "bmoreproduct1" posted comments on Reddit referencing his enrollment in medical school. OKPARAEKE's Cellphone contained a photograph of OKPARAEKE wearing a white lab coat and a "Student Doctor" identification card for a medical services provider based in Middletown, New York. The identification card features a photograph of OKPARAEKE above the name "EMEKA OKPARAEKE."

        d.    In a comment posted on Reddit, "bmoreproduct1" referenced, in sum and substance, the use of Bitcoin currency to buy kilograms of fentanyl from "Chinese vendors." OKPARAEKE has a Bitcoin application on his Cellphone and received Package-1 and Package-2 from Hong Kong, each of which contained a kilogram of a substance that field-tested positive for a fentanyl analogue. *See supra* ¶¶ 15(a)-(c), 20(a).

        e.    In a comment on Reddit.com, "bmoreproduct1" wrote, in sum and substance, that one can ship controlled

substances through the USPS while avoiding law enforcement detection by mailing packages with stamps purchased online. OKPARAEKE has made numerous bulk purchases of stamps online. *See supra* ¶ 13.

   f. In a Reddit comment posted in or about September 2016, "bmoreproduct1" states that he is 27 years old. Based on my review of New York State Department of Motor Vehicle records containing OKPARAEKE's birthdate, I know that in September 2016, OKPARAEKE was 27 years old.

   g. In a Reddit comment, "bmoreproduct1" states, in sum and substance, that he has traveled to Ghana. I have reviewed a Facebook.com account in the name of "Emeka Okparaeke," featuring a picture of OKPARAEKE. The Facebook account also features a photograph album titled "Time in Ghana."

   h. In a Reddit comment, "bmoreproduct1" stated, in sum and substance, that he drives a Honda and lives in a studio apartment with an air mattress. OKPARAEKE's Vehicle is a Honda Accord. A photograph recovered from OKPARAEKE's Cellphone depicts an air mattress lying on the floor of a room.

   WHEREFORE, the deponent respectfully requests that CHUKWUEMEKA OKPARAEKE, a/k/a "Emeka," the defendant, be arrested and imprisoned or bailed, as the case may be.

_____
BRAD RUGGIERI
United States Postal Inspector
U.S. Postal Inspection Service

Sworn to before me this
17th Day of March, 2017

_____
HONORABLE JUDITH C. McCARTHY
United States Magistrate Judge
Southern District of New York