UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

CHUKWUEMEKA OKPARAEKE,

Defendant.

No. 17-CR-225 (NSR)
ORDER AND OPINION

NELSON S. ROMÁN, United States District Judge

Defendant Chukwuemeka Okparaeke ("Defendant") is charged in an eight-count Superseding Indictment with (1) conspiracy to distribute, and to possess with intent to distribute, controlled substances and controlled substance analogues, in violation of 21 U.S.C. §§ 813, 841(a)(1), 841(b)(1)(A), 841(b)(1)(C) and 846 (Counts 1-3); (2) importation and attempted importation of controlled substance analogous, in violation of 21 U.S.C. §§ 813, 952(a), 960(a)(1), 960(b)(1)(F), 960(b)(3), and 963 (Counts 4 & 7); (3) distribution of, and attempted possession with intent to distribute, controlled substances and controlled substance analogous, in violation of 21 U.S.C. §§ 813, 841(a)(1), 841(b)(1)(A), 841(b)(1)(C) and 846 (Counts 5 & 6); and (4) distribution of a controlled substance analogue resulting in the death of an individual, in violation of 21 U.S.C. §§ 813, 841(a)(1), and 841(b)(1)(C) (Count 8). (*See* S3 Superseding Indictment, ECF No. 77.)

Presently before the Court is Defendant's motion for this Court to (1) reconsider its denial of Defendant's motion to suppress evidence collected pursuant to a warrant for real-time geolocation information (the "GPS Warrant"); (2) order a *Franks* hearing; and (3) suppress evidence obtained during a purported search of Defendant's car. (ECF Nos. 89 & 97.)

After reviewing all of the parties' submissions, Defendant's motion is DENIED.



1

## BACKGROUND

The Court assumes familiarity with the facts and procedural background of this case, which has been fleshed out through this Court's numerous orders and opinions. *See United States v. Okparaeke*, No. 17-CR-225 (NSR), 2018 WL 5729296 (S.D.N.Y. Nov. 2, 2018) ("*Okparaeke III*"); *United States v. Okparaeke*, No. 17-CR-225(NSR), 2018 WL 4003021 (S.D.N.Y. Aug. 21, 2018) ("*Okparaeke II*"); *United States v. Okparaeka*, No. 17-CR-225 (NSR), 2018 WL 3323822 (S.D.N.Y. July 5, 2018) ("*Okparaeke I*"). For context, the Court briefly details the procedural posture of underlying Defendant's current motion.

Defendant brings this motion on the heels of several prior challenges to the propriety of certain warrants issued, and warrantless searches undertaken, by law-enforcement officers throughout their investigation into Defendant's alleged criminal conduct. (ECF Nos. 30, 45, & 58.) In resolving these motions, the Court determined, as relevant here, that (1) the GPS Warrant issued on February 24, 2017 was supported by probable cause, and, in any event, law enforcement relied on the warrant in good faith under *United States v. Leon*, 468 U.S. 897, 923 (1984), *see Okparaeke II*, 2018 WL 4003021 at *13 & n.9; *Okparaeke I*, 2018 WL 3323822 at *8-9; and (2) there was no basis for a *Franks* hearing on the truthfulness of the factual statements made in the affidavit of Detective M.A. Nickolas ("Nickolas") in support of the GPS Warrant (the "Nickolas Affidavit"), *see Okparaeke I*, 2018 WL 3323822 at *9 n.5.

Following this Court's November 2, 2018 Order and Opinion, Defendant moved to proceed *pro se*. As such, on April 3, 2019, Court held a *Faretta* hearing and granted Defendant's motion. Thereafter, on April 22, 2019, Defendant filed his present motion, asking this Court to "reconsider its ruling [on] the GPS warrant, [moving] for a Franks Hearing, and [requesting that this Court]

suppress any and all evidence found during an illegal search of [Defendant's] car." (Def. Mot. for Reconsideration ("Def. Mot."), ECF No. 91.)

Defendant advances three arguments to support his motion. *First*, he argues that this Court committed clear error in finding that the GPS Warrant was supported by probable cause because (1) the Nickolas Affidavit did not establish a factual nexus between the phone to be tracked and the underlying crime, and (2) there was no basis in the affidavit to conclude that Defendant owned the phone. (*Id.* at 2.) *Second*, he contends that the Nickolas Affidavit contained various claims that were made with "a reckless disregard for the truth" and omitted material information. (*Id.* at 4-5.) *Finally*, he maintains that there was "no probable cause to search [Defendant's] car" and thus obtain his cellular phone, which ultimately allowed law enforcement officials to execute a cellphone search warrant (the "Cellphone Warrant"). (*Id.* at 6.) Notably, Defendant contends for the first time in this present motion that a search of his car occurred on February 1, 2017.

The Government opposed on June 25, 2019. (Gov't Opposition ("Gov't Opp."), ECF No. 88.)[1] In its opposition, the Government argued that (1) Defendant's motion for reconsideration is untimely and fails to offer any basis for this Court to reconsider its prior rulings regarding the GPS Warrant or a *Franks* hearing (*id.* at 6-8); and (2) Defendant's contention that law enforcement seized his phone from a "warrantless search of his car" is baseless because his car was never searched on February 1, 2017 and, regardless, "the Government does not seek to introduce any evidence from a search of [Defendant's] car on that date" (*id.* at 8-9).

---

[1] Defendant filed a virtually identical motion on June 6, 2019, which advanced the same arguments in support. (ECF No. 89.). Given the near identical nature of this filing to the original motion, the Government indicated that it would rely on its original opposing papers. (ECF No. 93.)

## DISCUSSION

### I. Timeliness of Defendant's Motion for Reconsideration

"Reconsideration of a court's previous order is an 'extraordinary remedy to be employed in the interests of finality and conservation of scarce judicial resources.'" *Montanile v. Nat'l Broad. Co.*, 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002) (quoting *In re Health Mgmt. Sys. Inc. Secs. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). There is "no specific rule, either in the Federal Rules of Criminal Procedure or in this district's local criminal rules that provide for reconsideration of a ruling in a criminal matter." *United States v. Cartagena*, No. 10 Cr. 222-2, 2012 WL 2958175, at *1 (S.D.N.Y. July 20, 2012). Nevertheless, "courts in this district allow such motions, applying the applicable Local Civil Rules and its accompanying case law." *Id.* (citing *United States v. Berger*, 188 F. Supp. 2d 307, 338 (S.D.N.Y. 2002)). Specifically, courts will look to Local Civil Rule 6.3, which governs motions for reconsideration. *See United States v. Baldeo*, No. S1 13 Cr. 125 (PAC), 2015 WL 252414, at *1 (S.D.N.Y. Jan. 20, 2015); *see also United States v. Carollo*, No. 10 Cr. 654 (HB), 2011 WL 5023241, at *2 (S.D.N.Y. Oct. 20, 2011) ("Although neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules of this Court address the proper standard for a motion for reconsideration in criminal cases, courts in this district have applied the standard of Local Rule 6.3.").

Local Civil Rule 6.3 provides that "a notice of motion for reconsideration or reargument of a court order determining a motion shall be served within fourteen (14) days after the entry of the Court's determination of the original motion." Although courts may excuse an untimely filing, there generally must be good cause to do so. *See Davidson v. Scully*, 172 F. Supp. 2d 458, 462-63 (S.D.N.Y. 2001) (excusing *pro se* plaintiff's untimely filing because of his pro se status and the fact that plaintiff had filed a notice of motion with the clerk in a timely fashion). Critically, a

moving party's *pro se* status will not, on its own, excuse a delay. *See Fabricio v. Artus*, No. 06 Civ. 2049 (WHP) (GWG), 2013 WL 2126120, at *1 (S.D.N.Y. Apr. 18, 2018) (rejecting movant's argument that court should have treated untimely motion as timely because he was not a lawyer); *Grullon v. United States*, No. 99 Civ. 1877 (JFK), 2005 WL 1560479, at *1 (S.D.N.Y. June 28, 2005) ("*Pro se* status does not excuse noncompliance with the Local Rules.").

Here, Defendant's motion for reconsiderations comes *nearly six months* after this Court's November 2, 2018 Opinion & Order on his motion to suppress, and *almost nine months* after its July 5, 2018 Opinion & Order. For this reason, the Government argues, Defendant's motion should be denied as untimely. (Gov't Opp. at 6.) The Court agrees. Although Defendant filed his motion three weeks after he was granted leave to proceed *pro see*, he nevertheless had five months prior to that date to move this Court for reconsideration of its opinion. Defendant never did so, and provides no explanation to the Court about why such a delay should be disregard. Therefore, although it is mindful of the latitude that it should afford *pro se* Defendants, the Court denies Defendant's motion for reconsideration as untimely.

## II.     Merits of Defendant's Motion for Reconsideration

Even if Defendant's motion was not untimely, it nevertheless fails to offer a sufficient basis for this Court to reconsider its prior rulings.

Under Local Civil Rule 6.3, the "moving party must demonstrate controlling law or factual matters which it believes the court overlooked and that might reasonably be expected to alter the court's decision." *Berger*, 188 F. Supp. 2d at 338-39. Courts will generally not grant motions for reconsideration unless the moving party establishes "an intervening change of controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." *Cartagena*, 2012 WL 2958175 at *2; *see also U.S. Titan, Inc. v. Guanzhou Zhen Hua Shipping*

5

*Co., Ltd.*, 182 F.R.D. 97, 100 (S.D.N.Y. 1998) ("A motion 'to alter or amend' a judgment under Fed.R.Civ.P. 59(e), or a motion for reconsideration or reargument under Local Civil Rule 6.3, provides the Court with an opportunity to correct manifest errors of law or fact, hear newly discovered evidence, consider a change in the applicable law or prevent manifest injustice.").

Local Civil Rule 6.3 is "narrowly construed and strictly applied in order to avoid repetitive arguments already considered by the Court." *Spigelman v. United States*, 10 Civ. 7579 (SAS), 05 CR 960 (SAS), 2012 WL 13080639, at *1 (S.D.N.Y. Apr. 9, 2012). Because of this "strict" standard of review, the "burden is on the movant to demonstrate that the Court overlooked controlling decisions or material facts that were before it on the original motion, and that might 'materially have influenced its earlier decision.'" *United States v. Morillo-Vidal*, No. 10 Cr. 222, 2011 WL 4072173, at *2 (S.D.N.Y. Sept. 13, 2011).

Notably, a motion for consideration is neither a "substitute for appeal" nor a "second bite at the apple for a party dissatisfied with a court's ruling." *Spigelman*, 2012 WL 13080639 at *1. Consequently, the moving party "may neither repeat 'arguments already briefed, considered and decided,' nor 'advance new facts, issues or arguments not previously presented to the Court.'" *Cartagena*, 2012 WL 2958175 at *2 (quoting *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990)).

### A. Defendant Offers No Basis for this Court to Reconsider Its GPS Warrant Ruling

Defendant argues that this Court's previous determinations that the GPS Warrant was supported by sufficient probable cause, or, in the alternative, that law enforcement relied on it in good faith, were "clear error[s] in law." (Def. Mot. 2-3.) The Court disagrees. At bottom, Defendant's motion merely rehashes arguments previously rejected by this Court in two separate opinions. Defendant neither points to any overlooked facts or change in controlling case law, nor

has he established that the Court's prior ruling was clearly erroneous.[2] Simply put, Defendant has not pointed to any "overlooked-matters . . . that might reasonably be expected to alter [this Court's] conclusion" that the GPS Warrant was supported by probable cause and that, in any event, law enforcement could rely on the warrant in good faith. *See Cartagena*, 2012 WL 2958175 at *2.

Defendant's contention that this Court's erred in observing that the GPS Warrant established a connection between Defendant and the target cellphone number in its accompanying "Application for Sealing of Affidavit and Search Warrant" (the "Sealing Affidavit") does not alter this Court's conclusion. (Def. Mot. 2 (citing *United States v. Falso*, 544 F.3d 110, 110-11 (2d Cir. 2008).) Even disregarding the connection detailed in the Sealing Affidavit, there was sufficient information within the four corners of the Nickolas Affidavit to establish the requite connection. Indeed, the Nickolas Affidavit twice explained how the cellphone number to be tracked would be relevant to locating and investigating Defendant, whom the Affidavit identified as currently engaged narcotics distribution. (*See* Nickolas Affidavit at 2, 5.)

For these, the Court denies Defendant's motion to reconsider its GPS Warrant ruling.

## B. Defendant Offers No Basis to Reconsider this Court's *Franks* Hearing Ruling

Defendant contends that he is entitled to a *Franks* hearing because the Nickolas Affidavit "made various claims that were made with a reckless disregard for the truth" or "omitted material information." (Def. Mot. 4.) Specifically, Defendant argues that Nickolas (1) "out and out lie[d]"

---

[2] Defendant's contention that the Nickolas Affidavit is a "carbon copy" of the affidavit in *United States v. Gonzales*, 339 F.3d 1225 (10th Cir. 2005) is misplaced. In that case, the 10th Circuit was clear that the affidavit at issue was devoid of any connection between the house to be searched and defendant. *Id.* at 1227-28. Further, the court had determined that law enforcement could not rely on the warrant because the only facts before the magistrate were "the physical description of the address" and "that [defendant] was a convicted felon and a Glock 10mm was found in a vehicle in which he was the only occupant." *Id.* at 1230. Here, as this Court previously explained, although the GPS Warrant is not replete with facts, it is not so totally devoid of factual circumstances to support the allegations therein, and, in fact, it provides sufficient factual details and context to establish probable cause for the GPS Warrant. Furthermore, even assuming there was no probable cause, there was sufficient information, unlike in *Gonzales*, that would have allowed reasonable officers to rely on it in good faith.

about contacting Defendant via the internet; (2) recklessly disregarded the truth by claiming that he "learned that the suspect is engaged in the movement of funds in and out of the online marketplace" through a "virtual currency account" because he did not have a "scintilla of evidence that [Defendant] controlled the Bitcoin address" at issue; (3) intended to mislead the warrant-issuing judge by stating that he "confirmed the suspect lives and works in the geographical area from where the packages originated"; and (4) failed to disclose to the warrant-issuing judge that the cellphone number account was registered to "Okoro Okparaeke." (*Id.* at 4-5.) None of these bases advanced by Defendant establish that "(1) the claimed inaccuracies or omissions [in the affidavit] are the result of the affiant's deliberate falsehood or reckless disregard for the truth" or that "(2) the alleged falsehoods or omissions were necessary to the judge's probable cause finding." *United States v. Mandell*, 710 F. Supp. 2d 368, 372 (S.D.N.Y. 2010).

To begin, Defendant's argument that Nickolas "out and out lie[d]" by stating he contacted Defendant via the internet has already been soundly rejected by the Court. *See Okparaeke I*, 2018 WL 3323822 at *9 n.5. Defendant does not point to any clear error in law, change in controlling law, or newly discovered facts, and thus has provided no basis for this Court to reconsider its prior decisions regarding the necessity of a *Franks* hearing.

For his remaining factual contentions—that (1) Nickolas did not know Defendant had control of the bitcoin address at issue, (2) Nickolas misled the warrant-issuing judge when he confirmed that Defendant lived and worked in the geographical area where the USPS packages originated, and (3) the cellphone records Nickolas obtained from Sprint listed the name Okoro Okparaeke—Defendant effectively raises new facts and/or arguments that he could have made in his original motions. Because he is not permitted to advance new arguments or facts on a motion

8

for reconsideration so as to obtain second bite at proverbial apple, *see Cartagena*, 2012 WL 2958175 at *2, Defendant's arguments are not properly before the Court.

In any event, to the extent Defendant is renewing his prior motion, he has failed to make the substantial preliminary showing necessary for a *Franks* hearing. Simply stated, the facts adduced in Defendant's motion do not, on their own, establish that Nickolas was deliberately false in his factual statements or recklessly disregarding the truth. Although Defendant makes conclusory claims that Nickolas "clearly [] lie[d]" or "inten[ded] to mislead the judicial officer," the evidence and arguments proffered by Defendant in support of his motion at most identify discrepancies (if any) that do not otherwise seriously impugn the factual basis of the GPS Warrant.

In sum, the Court denies Defendant's motion for a *Franks* hearing.

## III. Motion to Suppress Evidence from an Alleged Vehicular Search

In addition to the above-referenced issues, Defendant has also moved to suppress evidence "derived from the illegal search of [his] car," which he contends—for the first time on this present motion—purportedly took place on February 1, 2017. (Def. Mot. 6.) To this end, Defendant maintains that law enforcement officers "searched his automobile and seized from it his Samsung Galaxy S5 phone." (*Id.*) Defendant avers that "the police would have been unable to identify the phone had they not seized the phone" from Defendant's car. (Def. Mot. 6) However, both the Government and its witness at the suppression hearing held on October 10, 2018 (the "October 10 Hearing"), Postal Inspector Brad Ruggieri ("Ruggieri") paint a drastically different account of what transpired on February 1, 2017.

The Government explains that "defendant's prior counsel did not move to suppress any evidence derived from a search of [Defendant's] car in February 2017 for good reason: the car was never searched on February 1, 2017." (Gov. Opp. 8.) The Government further represents that it

was not until March 20, 2017 that "law enforcement conducted a court-authorized search of defendant's vehicle." (*Id.* at 8 n.2.) The Government's position is corroborated by testimony adduced at the October 10 Hearing, which Defendant does not seriously challenge. Ruggieri testified, under penalty of perjury, that defendant was "detained . . . in the parking lot for the Middletown Post Office," and law enforcement officers thereafter patted him down and removed his personal property from his person. (Oct.10, 2018 Hr'g Tr. ("Hr'g Tr.") at 13.) It was Ruggieri's understanding that the items removed from Defendant's person were a "cellphone, a wallet and car keys." (*Id.*) Critically, as Ruggieri noted on cross-examination, Defendant "hadn't gotten back into the vehicle" after he was detained, nor did Ruggieri recall Defendant's car being searched during his February 1, 2017 detainment.[3] (*Id.* at 22-23.)

Given the above facts, the Government has represented that it does not—and essentially cannot—"seek to introduce any evidence from a search of the defendant's car on [February 1, 2017]." (*Id.* at 8.) As such, even assuming Defendant's car was searched on February 1, 2017, there is no evidence to be suppressed.

Nevertheless, although stylized as a motion to suppress evidence from an illegal search of his car, Defendant's motion appears to be, in fact, a renewed challenge the propriety of the Cellphone Warrant. This Court, however, plainly held in its November 2, 2018 Opinion and Order that there was no basis to suppress Defendant's identification of the make and model of his cellphone at his February 1, 2017 interrogation, such that the Cellphone Warrant had a sufficient factual predicate. *See Okparaeke III*, 2018 WL 5729296 at *2-3 ("Defendant's Motion to Suppress

---

[3]     In his affirmation—which submitted "under oath" but is not notarized or made under penalty perjury (*see* 28 U.S.C. § 1746)—Defendant states that he "saw Brad Ruggieri and other law enforcement officers search [his] car and remove various items from it." (Def. Mot. 1.) However, despite this newly-offered factual representation, Defendant does not, at any point, challenge the veracity Ruggieri's testimony that flatly contradicts his account, nor did he or his prior counsel do so at the October 10 Hearing (*see* Hr'g Tr. at 48-49 ("MR. MIRVIS: Judge, Mr. Okparaeke would also like me to be able to address the issue of where the phone was actually recovered . . . . Judge, that request is withdrawn.")).

his statement to law enforcement officers on February 1, 2017, in which Defendant identified the make and model of his cellphone and evidence recovered pursuant to a subsequent search warrant for Defendant's cellphone is denied."). Defendant does not assail this Court's previous holding or otherwise offer a legal basis for the Court to reverse its determination. Accordingly, Defendant's motion to suppress evidence from the Cellphone Warrant is denied.

## **CONCLUSION**

For the foregoing reasons, the Defendant's motion for reconsideration and to suppress evidence is DENIED.

The Clerk of the Court is respectfully requested to terminate the motions at ECF Nos. 89 and 91. The Clerk of the Court is further directed to mail a copy of this Order & Opinion to the *pro se* Defendant at the below listed address and file proof of service on the docket.

Dated: September 6, 2019
        White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

Mail To: Chukwuemeka Okparaeke
        #78867-054
        Metropolitan Detention Center
        P.O. Box 329002
        Brooklyn, NY 11232