```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/14/2021
```

The Honorable Nelson S. Roman
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

The Government is directed to respond on or before May 21, 2021.

Re: United States v. Okparaeke S3 17 Cr. 225 (NSR)

Dated: 5/14/2021
White Plains, NY

SO ORDERED:

[signature]

HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE

Dear Judge Roman,

Okparaeke respectfully submits these motions by letter motion. The defendant seeks to withdraw his guilty plea and respectfully requests a Fatico hearing.

1. Okparaeke moves to withdraw his guilty plea as to Count 1 because AH-7921 was not properly added as a Schedule 1 controlled substance; therefore, U-47700 cannot be a controlled substance analogue. The drug named in the Federal Register as AH-7921 has a different chemical name compared to the drug identified by the UN Commission for Narcotics as AH-7921. The Federal Register identifies AH-7921 as "3,4-dichloro-N-[(1-dimethylamino)cyclohexylmethyl]benzamide". In contrast, the UN Commission for Narcotics identifies AH-7921 as "3,4-dichloro-*N*-{[1-(dimethylamino)cyclohexyl]methyl}benzamide". The difference, however subtle, is not immaterial. The parentheses, braces, and brackets in the technical name are important, just as they are in mathematics and grammar. For example, in math, 5x3+3=18, whereas 5x(3+3)=30; the parentheses change the order of operations. In writing, "let's eat, grandpa" and "let's eat grandpa" mean two different things, at least technically. Here, the different punctuations within the chemical names refer to different chemical structures.

   The structural difference between the two names boils down to where the "1-dimethylamino" group is located. The brackets in each name help pinpoint its location within the structure. In one case, the dimethylamino is at position 1 on the "cyclohexylmethyl" portion of the structure: [(1-dimethylamino)cyclohexylmethyl]. In the other case, the dimethylamino is at position 1 on the "cyclohexyl" portion of the structure: [1-(dimethylamino)cyclohexyl]. We asked a chemist to draw the structures identified by the two contrasting names provided for AH-7921. These drawings are attached as Exhibit A. These chemical drawings help illustrate the difference in the location of the dimethylamino group, which is color-coded in green.

   Count 1 of the criminal information to which Okparaeke plead guilty, asserts that in November 2016 Okparaeke distributed U-47700 which was charged as a controlled

MEMO ENDORSED

substance analogue[1] of 3,4 Dichloro-N-[(1-dimethylamino)cyclohexylmethyl]benzamide. The Code of Federal Regulations lists 3,4 Dichloro-N-[(1-dimethylamino)cyclohexylmethyl]benzamide as a Schedule I Controlled Substance and makes its scheduling on Schedule I of the list of controlled substances inclusive of its salts, esters, ethers, isomers, and salts, ethers, esters and salts of its isomers. Okparaeke moves to withdraw his plea because 3,4 Dichloro-N-[(1-dimethylamino)cyclohexylmethyl]benzamide was not properly added to the list of Controlled Substances. The UN Commission of Narcotic Drugs chemically identified another compound, 3,4-dichloro-N-{[1-(dimethylamino)cyclohexyl]methyl}benzamide, as being a Schedule I Controlled substance and included it in the Single Convention of Narcotic Drugs (Exhibit B, Annex, Pg 10). There are substantive differences in chemical structure, and therefore in chemical properties and effects, between 3,4 Dichloro-N-[(1-dimethylamino)cyclohexylmethyl]benzamide and 3,4 Dichloro-N-{[1-(dimethylamino)cyclohexyl]methyl}benzamide.[2]  The Attorney General was given statutory authority to schedule things that were also scheduled in accordance with the Single Convention of Narcotic Drugs with the passage of the Controlled Substances Act; but nowhere in Title 21 § 811(d)(3), is the Attorney General given the power to schedule substances other than those specifically required by treaty. Since nowhere on the Scheduling Notice (Exhibit C) produced by the UN Commission of Narcotics Drugs does it mention anything about the isomers, salts, esters, ethers, and salts, ethers and esters of 3,4 Dichloro-N-[(1-dimethylamino)cyclohexylmethyl]benzamide the regulation as promulgated in the Code of Federal Regulations is invalid and Okparaeke is legally innocent of the count 1 because U-47700 was not a controlled substance analogue at the time because the placement of the salts, ethers, esters, and isomers of 3,4 Dichloro-N-[(1-dimethylamino)cyclohexylmethyl]benzamide and 3,4 Dichloro-N-[(1-dimethylamino)cyclohexylmethyl]benzamide in the Code Federal Regulations was clearly against the Administrative Procedures Act and Controlled Substance Act. The Administrative Procedures Act allows for reviewing courts to dismiss regulations if they were promulgated without following the procedures set forth in the law and if they were

---

[1] The Controlled Substance Analogue Act of 1986 was a part of the Anti-Drug Abuse Act of 1986, an omnibus bill that changed the Federal Drug laws. A controlled substance analogue is a chemical that has a chemical structure that is substantially similar to a controlled substance in Schedule 1 or 2 and etc... The criminal information that Okparaeke plead guilty to claimed that U-47700 was a controlled substance analogue of the aforementioned compound. It is the Defendant's claim that the aforementioned chemical was not properly added to the controlled substance list in the Code of Federal Regulations; therefore, he is legally innocent of the charge of distributing a controlled substance analogue. There is no question that U-47700 was not a controlled substance when it was alleged to have been distributed on November 6th 2016.

[2] The differences in the brackets may seem trivial, but they cause the names to refer to different compounds having different structures and effects.  The compound identified by the UN has a dimethylamino on the *methyl* (i.e. position 1) of the cyclohexyl group.  These chemical names are different, and therefore, the structures and substances are different.  Once it is recognized that these two names refer to different structures, the inescapable conclusions are that (a) "3,4-Dichloro-N-1{[ 1-(dimethylamino)cyclohexyl]methyl}benzamide" is not scheduled Federally, and (b) the alternative substance named as  "3,4-Dichloro-N-[(1-dimethylamino)cyclohexylmethyl]benzamide" was improperly scheduled.

arbitrary or capricious. At no point in time did the DEA follow the procedures as set forth in the APA[3] or the Controlled Subtance Act[4] regarding the scheduling of salts, ethers, esters and isomers of 3,4 Dichloro-N-[(1-dimethylamino)cyclohexylmethyl]benzamide and its designation of 3,4 Dichloro-N-[(1-dimethylamino)cyclohexylmethyl]benzamide as a controlled substance. Therefore, the scheduling was arbitrary and capricious and not in accordance with the law.

2. Okparaeke is legally innocent of Count 3 of the criminal information because Okparaeke at no point in time during the plea allocution said anything about controlling 680.6 Bitcoins. Okparaeke simply stated that he told the United States Attorney that he thought the Bitcoins were stolen; when queried again by the Magistrate, Okparaeke stated that he thought it was improbable to the point of being implausible (highly unlikely) for the Bitcoins to have been stolen. At no point in time did Okparaeke actually admit to knowing that the Bitcoins weren't actually stolen via a hack or admit that the Bitcoins were under his dominion. Fed. R. Crim. P 11(b)(3) provides that "[b]efore entering judgement on a guilty plea, the Court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). In carrying out this obligation, a district court is "free to rely on any facts at its disposal," including information obtained by making an "inquiry… of the attorneys for the government." *United States v. Maher*, 108 F.3d 1513, 1524-25 (2d Cir. 1997). Furthermore, Rule 11(b)(3) "does not require that the court be satisfied that a jury would return a verdict of guilty or that the court weigh evidence to assess whether it is even more likely than not that the defendant is guilty. Instead, Rule 11 requires the court to assure itself simply that the conduct to which the defendant admits is in fact an offense under statutory provision under which he is pleading guilty" such that, "were a jury to accept [those admissions] as fact…, a guilty verdict would follow." United States v. Albarran, No. 17-2019 U.S. App. LEXIS 34101, 2019 WL 6044128, at *9 (2d Cir. Nov. 15, 2019). It is clear from reading the transcript of the plea allocution that Okparaeke would not have been found guilty of count 3 because he never mentioned controlling Bitcoins and just said he thought what he was telling the United States Attorney was unlikely.

---

[3] The APA would have required the DEA to place notice in the Federal Register asking for comment from the public and another notice, giving 30 days, before the final rule was promulgated. This was never done.

[4] The Controlled Substance Act gives the Attorney General the power to add and remove substances from the Controlled Substance List. There is a dedicated procedure that requires a recommendation from the Health and Human Services secretary and specific findings before a substance can become a Controlled Substance. There is no question that the Attorney General did not go through these procedures outlined in the Controlled Substance Act to make 3,4-Dichloro-N-[1-dimethylamino)cyclohexylmethylbenzamide a Schedule 1 Controlled Substance.
 There is an exception if the United States was required by treaties like the Single Convention of Narcotic Drugs but there is no evidence that the UN wanted the aforementioned chemical to be added to the list. A similarly named compound was added to the Single Convention of Narcotic Drugs but that chemical is structurally different than the chemical listed in the Code of Federal Regulations and the criminal information that Okparaeke plead guilty to.

3. Okparaeke should have a Fatico hearing to determine if on November 8th 2016, Okparaeke distributed a quantity of U-47700 that caused the death of "Teklinsky". During Okparaeke's plea allocution, Okparaeke stated that on November 8th 2016 Okparaeke dropped off packages containing U-47700 at the New Hampton New York Post Office. These packages were later seized by law enforcement and never were delivered to their intended recipients. It is the government's contention that these packages, through mechanism that would make Stephen King envious for its ingenuity, caused the death of Nicholas Teklinsky, an individual in Olympia Falls, Washington. It is the Government's contention that Teklinsky used the username "MDNMR" to order 3 grams of U-47700 from Okparaeke on November 6th 2016. Even the most perfunctory review of the server data given shows that this package was marked shipped on the 6th of November and not the 8th of November. Okparaeke never claimed to make any shipments on November 6th 2016 and thus Okparaeke's offense of conviction could not conceivably have killed anyone. The Court should also be mindful that decedent received 3 grams of U-47700 from an individual he identified as Austin. In text messages given to the defense on, the decedent talks about using U-47700 starting on October 28th 2016 through November 6th 2016. He never indicated that he had a source of U-47700 outside of his friend Austin. Upon his death on November 10th 2016 law enforcement searched his car and room and did not recover any envelopes or mail material. Law enforcement also interviewed his mother who stated Teklinsky could not have received any mail at the domicile where he died because he did not have a key to the mailbox. Law enforcement officers searched the local post office and local mailbox stores to no avail and never determined if Teklinsky had the ability to receive mail during his brief stay with his mother. Also, law enforcement officers produced a list of all the packages Okparaeke shipped in November 2016; there was not a single package that was shipped by Okparaeke to the state of Washington from the 6th of November to the 9th November.[5] [6]

Regards,

Chukwuemeka Okparaeke 78867054
Metropolitan Detention Center
P.O. Box 329002
Brooklyn, NY 11232

---

[5] Teklinsky had been staying with his mother for only 14 days; he stayed with his father in Michigan usually and received all his mail and packages there.
[6] There was one package that went to Tacoma Washington on November 4th 2016.