United States District Court
Southern District of New York

_____X

United States of America,

   -Against-                                              17 Cr. 225 (NSR)

Chukwuemeka Okparaeke

_____X

## **SENTENCING MEMORANDUM FOR THE DEFENDANT CHUKWUEMEKA OKPARAEKE**

Chukwuemeka Okparaeke 78867054
Metropolitan Detention Center
P.O. BOX 329002
BROOKLYN, NY 11232

Nelson S. Roman
United States District Judge
Southern District Of New York
300 Quarropas Street
White Plains, NY 10601

Re: United States v. Okparaeke S3 17 Cr. 225 (NSR)

Dear Judge Roman,

  This letter is respectfully submitted pursuant to Rule 32 of the Federal Rules of Criminal Procedure and sets forth several matters that Okparaeke will raise to aid in the determination of an appropriate sentence, serving the interests of justice and sentencing goals of 18 U.S.C. § 3553(a). Okparaeke was arrested on March 20, 2017 and has been detained since his arraignment in the Southern District of New York ("SDNY"). On October 15, 2020, Okparaeke pleaded guilty to a three count criminal information pursuant to a plea agreement with the Government.

## BACKGROUND

  Okparaeke was born in 1989 to parents Nkechi Okparaeke and Okoro Okparaeke. He has three siblings, an older sister, a twin sister, and younger brother. He and his siblings were raised in New Jersey. Both of Okparaeke's parents were from Nigeria, a country in West Africa; they worked hard to provide a stable middle-class income for their children. Okparaeke's mother is a nurse and his father is a retired state of New Jersey auditor. Okparaeke was raised in a middle class household in New Jersey and routinely interacted with an extended family of cousins, aunts, and uncles. Okparaeke had an idyllic childhood in New Jersey. He went on trips to his mother and father's native Nigeria multiple times so he would never forget his roots. He attended summer camp in New Jersey. He went on vacations with his family all across the United States. Okparaeke could not have asked for a better childhood.

  Okparaeke enjoyed schooling early on and particularly took a liking to history and biology. Okparaeke's father instilled in him the importance of education. Okparaeke graduated high school in the top 20% of his class and scored in the top 5% of the SAT. Okparaeke competed in football in high school and was a member of a team that won the Central New Jersey Group IV State Championship in 2005. Okparaeke was an academic Olympiad representative from his high school representing them in biology. Okparaeke also was a Mock Trial attorney during his high school days. Okparaeke won numerous scholarships during high school. He became one of a few thousand Gates Millennium Scholars in 2007 and also was a National Achievement Scholar. Had he decided to attend Rutgers University Okparaeke would have also been a James Dickinson Carr Scholar.

Okparaeke decided to attend Tufts University in 2007; he attended with his twin sister and graduated with a degree in Economics. During college, Okparaeke was a member of various on campus organizations. Okparaeke also volunteered and studied abroad in Africa in 2009.

During the summer of 2010 Okparaeke interned at Goldman Sachs in Jersey City New Jersey. During this time Okparaeke worked in the operations division; Okparaeke learned about the minutiae that undergirds the financial system. From 2010 to 2011 Okparaeke attempted to get various jobs in business, finance and related fields but failed to do so. Subsequent to his graduation in 2011, Okparaeke completed various medical school prerequisites and applied for medical school, ultimately getting accepted into Touro College of Osteopathic Medicine. Okparaeke moved to New York City to attend medical school in 2013; Okparaeke attended Touro with the dream of becoming an orthopedic surgeon. Okparaeke enjoyed the first two years of medical school greatly. During these first two years Okparaeke tutored Harlem children in various subjects. Okparaeke also volunteered for Meals-On-Wheels. During the end of Okparaeke's second year of medical school Okparaeke took medical boards and unfortunately did very poorly. This drastically reduced Okparaeke's dreams of becoming an orthopedic surgeon. This lead to a tragic downward spiral; Okparaeke became depressed and had immense difficulty getting up out of bed and doing his medical rotations at a hospital in Orange County New York. Clearly, Okparaeke was dealing with a mind-altering depression. Okparaeke withdrew from his family and friends and stopped engaging with society. Okparaeke's clinical grades suffered and he was threatened with being kicked out of medical school because of his depressed affect.

On March 20th, 2016 Okparaeke ingested some Alprazolam pills that he obtained to treat his insomnia and anxiety. The next thing Okparaeke recalls was waking up in the hospital where he was doing his medical rotations. Apparently, under the influence of this drug, Okparaeke crashed his car into another car. Okparaeke was not physically injured but he was in the hospital for 3 days and was diagnosed with Asbergers syndrome and poly-substance drug abuse. Subsequent to this hospitalization, Okparaeke was kicked out of medical school and had to attend the Committee for Physicians Health. This Committee recommended that Okparaeke see a psychiatrist to treat his depression and attend a drug treatment program so he could restart school. Okparaeke suffered debilitating depression that prevented him from rejoining school in earnest and caused him to engage in risky, illegal activities.

Subsequent to Okparaeke's arrest Okparaeke took an active role in his defense. His family hired Tony Mirvis, Esq. to represent Okparaeke. It became clear to Okparaeke that Mirvis did not know how to represent anyone. Mirvis copied Okparaeke's motions verbatim and submitted them to the Court with minor alterations.[1] Okparaeke decided to represent himself because Mirvis did not know that he had to retain experts for Okparaeke and do some level of pretrial investigation. Since becoming Pro Se Okparaeke has guided his defense; retaining

---

[1] *See* Exhibit A – Selection of Corrlink Emails between Okparaeke and Mr. Mirvis.

2

experts, guiding his legal advisors, and submitting motions to the Court. Okparaeke's first communication with the Court subsequent to being appointed as his own lawyer was to request various experts who his previous lawyer failed to hire. Okparaeke also submitted a motion to reconsider a previous denial of a suppression motion. It is clear, from observing Okparaeke in Court and reading the documents Okparaeke sent to the Court that Okparaeke argues seriously and doesn't make any specious arguments. Okparaeke's arguments cite case law from various Courts of Appeals and District Courts, including this very Court.

## **TERRIBLE CONDITIONS OF CONFINEMENT**

Okparaeke has been subjected to cruel and unusual circumstances of incarceration during his time at the Metropolitan Detention Center. Since the inception of the Coronavirus pandemic, Okparaeke has been kept in solitary confinement for at least 23 hours a day.[2] Many weeks elapsed where Okparaeke was not allowed outside of his cell for multiple days. Not only did these incredibly cruel conditions make it impossible for Okparaeke to defend himself they lead to feelings of anxiety, helplessness, and depression. Long periods of incarceration in solitary confinement have been shown to cause depression, insanity, and reduce life spans.[3] While in the MDC, Okparaeke contracted COVID-19 and was ill and symptomatic for approximately three weeks. This was not the only instance of poor living conditions during Okparaeke's incarceration. During the winter of 2019 the MDC was hit with a multi-week power outage.[4] This power outage caused the complete failure of the delivery of basic services like heat, electricity, and warm water; Okparaeke was subjected to freezing cold temperatures in his cell in the middle of winter.[5] There is no question that this brutal treatment will have deleterious effects on Okparaeke in the future.

---

[2] Noah Goldberg and Stephen Rex Brown, *Judge, Inmate Slam Conditions at NYC Federal Jails in Pandemic's 13th Month*, DAILY NEWS (Apr. 26, 2021).

[3] Many judges, in recognition of the unusually harsh conditions due to the COVID-19 pandemic, have varied from the guidelines when sentencing defendants. *See United States v. Capalbo*, 02 Cr 1237 (Preska, J.)(in a Davis re-sentencing proceeding, sentencing the defendant to Time Served in light of defendant's health conditions and COVID [Dkt No. 482]); *United States v. Carillo-Berber*, 18 Cr 703 (Crotty, J.)(court considered conditions of confinement in departing downward[Dkt. No. 28]); *United States v. Rivera*, 16 Cr 66 (Torres, J.) (Court imposed sentence of three months despite 5-11 month guidelines and stated that it "would be remiss if it failed to consider that being detained at the MCC for three months in ordinary times is very different from being detained for three months during the COVID-19 pandemic."); *United States v. Morgan*, 19 Cr 209 (Berman, J.)(Court imposed sentence less than one-half of the low end of the guidelines, based in part on conditions at MDC during pandemic); *United States v. Cirino*, 19 Cr 323(Rakoff, J.) (Court imposed sentence of 10 months despite 57-71 month guidelines and stated, "[I]t is fair to say that conditions in the prison system now result in a harshness that is not the norm and that ought to be recognized by the court as a mitigating factor. In effect, you are serving harder time every day you are in the federal prisons.")

[4] Annie Correal, *No Heat for Days at a Jail in Brooklyn Where Hundreds of Inmates are Sick and 'Frantic,'* NY TIMES (Feb. 1, 2019)

[5] *Id*.

## FUTURE PLANS

Okparaeke had developed various plans that he plans to take into action subsequent to his release. During Okparaeke's incarceration he has read countless books and magazines about business. His business plans have been reviewed by various scions of business; each one describes them as well-thought out and having the ability to be transformative. Okparaeke is currently in the process of developing a live-stream sales platform called Snagithere. Snagithere will be a mobile only platform that features various live-stream channels featuring the promotion and sale of various goods. Social media platforms like Tiktok have become famous by using algorithms to connect users with videos. Okparaeke's company will do the same with livestream product channels; for example, users interested in bath products will be routed, via Snagithere's proprietary algorithm, to various channels selling bath products. A user interested in custom Casio watches will be shunted via this superior technology to channels showing people selling watches. This same business model has been effective in China and other parts of the world. For example, in China livestream sales channels have been used to sell homes, trips into space, and even plastic surgery. Okparaeke has drafted wireframes for developing the app.

## THE APPROPRIATE SENTENCE

The Court is required to consider the factors set forth in Title 18 U.S.C. § 3553(a) and to impose a sentence that is both reasonable and "sufficient, but not greater than necessary, to comply with the purposes" reflected by the subsections of § 3553(a). Okparaeke is remorseful for his conduct and its subsequent impact on his community. He fully acknowledges his wrongdoing and is apologetic to the family of Mr. Teklinsky for their loss and to all who have suffered as a result of his actions. Okparaeke is regretful for misleading the US Attorney's Office. After a review of Okparaeke's life and circumstances, Okparaeke relies on the Court's compassion and mercy when sentencing.

Pursuant to his plea agreement, Okparaeke's base offense level is 40, pursuant to U.S.S.G. § 2Bl.l(a)(l) and the drug quantity table at U.S.S.G. § 2D1.l(a)(5). The Government has consented to a two-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3El.l(a), and an additional one-level reduction pursuant to U.S.S.G. § 3El.l(b). Accordingly, Mr. Duncan's applicable Guideline offense level is 37, with a Criminal History Category of I, resulting in a Guideline range of 210 to 262 months.

While the Probation Office is not bound by the Guidelines stipulation, Okparaeke objects to the enhancement for "mass-marketing" to sell a controlled substance. The Probation officer who prepared the report did not detail why, specifically, Okparaeke should get this enhancement. Mass-marketing would have entailed sending emails, text messages, using banners ads, etc..; none of these things Okparaeke is accused of doing.

**1) The nature and circumstances of the offense and the history and characteristics of the defendant (18 U.S.C. § 3553 (a)(l));**

    **a. Nature and circumstances of the offense:**

The offense to which Okparaeke pleaded guilty is undoubtedly serious. These are narcotics offenses in the Southern District of New York. He understands the severity and seriousness of his behavior and regrets the harm he caused to others. He is deeply remorseful for his part in this crime and is ashamed of his actions.

    **b. History and characteristics of the defendant:**

Unfortunately, Okparaeke's depression, coupled with his Asperger's syndrome lead to Okparaeke breaking the law. Okparaeke does not make any excuses for his criminal conduct. Prior to this offense Okparaeke's only brush with the law was an arrest for driving with a suspended driver's license.

**2) The need for the sentence imposed to: reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant (18 U.S.C. § 3553(a)(2)(A)-(C));**

Prior to the instant offense, Okparaeke had never served jail time. He is now facing a lengthy prison sentence for the first time. As evidenced by his Bureau of Prisons adjustment, Okparaeke has already been deterred by his current incarceration. He has read dutifully various books about entrepreneurship and has various plans to take these plans into action.

Federal Courts have sentenced people for similar conduct to drastically less time than the stipulated guidelines. See 754 Fed. Appx. 56, United States v. Waver, (2d Cir. 2019) (Sentencing a man to 84 months for the distribution of furanylfentanyl resulting in the death of an individual.) See also, 740 Fed. Appx. 751, United States v. Hicks-Bailey, (2d Cir. 2018) (Sentencing a man to 96 months for distribution of heroin resulting in the death of an individual.) See also 489 F.3d 40, United States v. Pacheco, (1st Cir. 2007) (Sentencing an individual to 36 months for the distribution of ketamine resulting in an individual's death.) A review of Federal sentences involving drug distribution resulting in death show the average sentence given is 96 months, with half of all sentences being less than 72 months. Okparaeke faces, at the minimum, 120 months of incarceration; this is far more than the average sentence for this conduct and Okparaeke relies on the Court's discretion and mercy at sentencing.

In addition to the sentence he receives, Okparaeke is also going to suffer the collateral consequences of this conviction for the rest of his life. These consequences "serve no useful function other than to punish criminal defendants after they have completed their court-imposed sentences."  He will carry with him the stain of being a federally convicted felon until the day he dies. This will undoubtedly further limit his prospects and opportunities for employment and continued education. He will never be allowed to vote or obtain licenses needed for many jobs and will face restrictions on housing, financial aid for college and public benefits. However, as

he has during his current incarceration, Okparaeke plans to avail himself of drug treatment and vocational options while serving his sentence. He therefore requests that the Court recommend him for substance abuse treatment through the Residential Drug Abuse Program.

Okparaeke is reflective of his past behavior, acknowledges his mistakes and regrets his actions. He knows that his poor choices will likely cause him to miss significant many years of his family's life. However, he has learned from his past experiences and is focused on becoming a better man.

## **CONCLUSION**

Okparaeke understands the seriousness of his offense and is remorseful for his actions. When Okparaeke involvement in this offense is viewed against the backdrop of his personal history and characteristics, it is clear that leniency is reasonable and approriate. Okparaeke respectfully reserves the right to raise additional issues at the time of sentencing. The Court's time and consideration of this submission is greatly appreciated.

Respectfully Submitted,

/s/

Chukwuemeka Okparaeke #78867054
Metropolitan Detention Center
P.O. 329002
Brooklyn, NY 11232