**MEMORANDUM ENDORSEMENT**

| |
|---|
| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: _6/20/2023_ |

**US v. Okparaeke**

17-cr-225-NSR

23-cv-3353-NSR

The Court is in receipt of Mr. Okparaeke's letter, received on June 15, 2023, responding to the Court's memorandum endorsement, dated June 8, 2023 (ECF No. 225, attached herein as Appendix A). Mr. Okparaeke instructs that his 28 U.S.C. § 2255 petition is as reflected in the attachments to the June 8, 2023 memorandum endorsement, which contains five separate arguments in support of his petition. (*Id.*) As such, the Court will deem those five arguments as his final § 2255 petition.

The Court resumes the briefing schedule as follows: The Government is directed to file a response to Mr. Okparaeke's final version of his 28 U.S.C. § 2255 petition on or before July 17, 2023. Mr. Okpareke is directed to file a reply on August 3, 2023.

The Clerk of the Court is kindly directed to mail a copy of this Order and its attachment to Mr. Okparaeke at the address on the docket, and show service on the docket.

Dated: June 20, 2023
       White Plains, NY

SO ORDERED:

HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE

# APPENDIX A

**MEMORANDUM ENDORSEMENT**

```
┌─────────────────────────────────────┐
│ USDC SDNY                           │
│ DOCUMENT                            │
│ ELECTRONICALLY FILED                │
│ DOC #: _____             │
│ DATE FILED: 6/8/2023                │
└─────────────────────────────────────┘
```

**US v. Okparaeke**
17-cr-225-NSR
23-cv-3353-NSR

The Court is in receipt of Mr. Okparaeke's letter, ECF No. 224 (attached), where he apologizes for having filed multiple version of his 28 USC 2255 petition.  On 6/1/2023, the Court granted Mr. Okparaeke leave to file a **final** version of his 28 USC 2255 petition, and gave him until June 16, 2023 to do so.

It appears that Mr. Okparaeke has not given the Court a complete copy of his **final** version of his 28 USC 2255 petition.  The Court instead has a copy of piecemeal portions of his petition, attached herein.

Mr. Okparaeke is directed to either (i) write to the Court confirming that the piecemeal portions of his petition that the Court attaches herein is what he wants the Court to deem as his final 28 USC 2255 petition; **OR** (ii) submit a **complete and final** version of his 28 USC 2255 petition, containing all of  the arguments that Mr. Okparaeke wishes to raise in **one** document. Mr. Okparaeke is directed to do so by June 29, 2023.

The Court will thereafter issue a remaining briefing schedule for the Government's opposition and Mr. Okparaeke's response.   The Clerk of the Court is directed to mail a copy of this order to Mr. Okparaeke at the address on the docket and show service on the docket.

Dated: June 8, 2023
White Plains, NY

SO ORDERED:

HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE

As: **Plaintiff Letter**
Date: 06 / 07 / 2023

Nelson S. Román
300 Quarropas St
White Plains, NY 10601

**RECEIVED**

JUN 0 7 2023

NELSON S. ROMÁN
U.S. DISTRICT JUDGE
S.D.N.Y.

6-4-23

Re: US v. Okparaeke, S4 17 Cr. 225 (NSR); OKPARAEKE v. US, 23-cv-3353-NSR

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 06/07/2023

Dear Judge,

This letter is a direct response to your most recent memorandum endorsement. I am sorry if I displeased the district court with my most recent pro se filings. Ideally, I would have a lawyer assist me but I am on my own. I pray my recent filing hasn't caused any duress upon the court and its staff but the most recent filings correct various grammatical issues, corrected a legal issue, and ~~preempted~~ addressed a new-fangled issue. Had the Government responded, I would've raised both of these arguement in my response; this would've compelled the Government to respond via a "sur-reply", causing needless more litigation.

~~Okparaeke I do~~

I promise to submit no additional briefs till the Government files its response

Regards,

Emeka Okparaeke 78867-054
P.O. Box 200, Canaan Prison Camp
Waymart, PA 18472



⟡78867-054⟡
Emeka Okparaeke
P.O. 200 Federal Prison Camp
Waymart, PA 18472
United States

# RECEIVED

JUN 07 2023

NELSON S. ROMAN
U.S. DISTRICT JUDGE
S.D.N.Y.

⟡78867-054⟡
Nelson Roman
300 Quarropas ST
White Plains, NY 10601
United States

10601-414000

THIS CORRESPONDENCE IS FROM AN INMATE
CURRENTLY IN THE CUSTODY OF
THE FEDERAL BUREAU OF PRISONS

USM
SDNY
WP

5-18-2023

Nelson S. Roman

300 Quarropas St

White Plains, NY 10601

Re: US v. Okparaeke, S4 17. Cr. 225(NSR),

Okparaeke v. US 23-cv-3353-NSR

Dear Judge,

Please consider this motion the final, amended version of
my 28. U.S.C. 2255 motion.

Thanks,

Emeka Okparaeke  78867054

P.O. Box 200

Canaan Prison Camp

Waymart, PA 18477

RECEIVED
MAY 2 4 2023
NELSON S. ROMÁN
U.S. DISTRICT JUDGE
S.D.N.Y.

TRULINCS 78867054 - OKPARAEKE, CHUKWUEMEKA - Unit: CAA-G-A

---------------------------------------------------------------------------------------------------

FROM: 78867054
TO:
SUBJECT: 28 U.S.C. 2255
DATE: 05/18/2023 02:37:11 PM

Nelson S. Roman
300 Quarroppas Street
White Plains, NY 10601

Re: US v. Okparaeke, 17 Cr. 225(NSR)

Dear Judge,

Please construe the following pursuant to 28 U.S.C. 2255. Any and all statements are made under the pains and penalties of perjury pursuant to 28 U.S.C. 1746.

Chukwuemeka Okparaeke

INTRODUCTION

Okparaeke moves the court to vacate Count Two.

DISCUSSION

1. Okparaeke is innocent of Count Two because a controlled substance analogue cannot be an "analogue of fentanyl" as described in Count Two.

Count Two of the criminal information alleged that Okparaeke violated 21 U.S.C. 960(b)(1)(F), in January and February of 2017, by importing into the United States 100 grams or more of a controlled substance analogue under 21 U.S.C. 802(32), which was also "an analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]propenamide ('fentanyl' herein). 21 U.S.C. 960(b)(1)(F) is preceded by 21 U.S.C. 960(a)(1) which states "contrary to...knowingly imports and exports a controlled substance shall be punished as provided section (b)." The Second Circuit in US v. McCray, 7 F.4th 40, U.S. App Lexis 12 (2d Cir. 2021) noted the disparate use of the word controlled substance and "controlled substance analogue" in the Anti-Drug Abuse Act of 1986. "Congress used the term of art "controlled substance analogue" elsewhere in the subchapter, see e.g., 21 U.S.C. 861(d)(1), and even elsewhere in &841 itself. For example, just a few paragraphs later in &841(b)(7)(A), Congress outlined a penalty structure for distributing a 'controlled substance or controlled substance analogue with the intent to commit a crime of violence. Elsewhere &841(g)(2)(A)(i), Congress defined the term 'date rape drug' as ...(GHB) or any controlled substance analogue of GHB...." Had Congress wanted 960(b)(1)(F)'s prohibitions to apply to controlled substance analogues they would have put the phrase controlled substance analogue after the phrase controlled substance in 21 U.S.C. 960(a)(1) like they did in the other parts of Anti-Drug Abuse Act of 1986.

The phrase "analogue of 'fentanyl'" is also defined precisely in the accompanying legislative committee report which stated that it did not include controlled substance analogues. The enhanced penalty provisions applicable to fentanyl analogues were amendments added to the Controlled Substances Act in the Anti-Drug Abuse Act of 1986. See Pub. L. No. 99-570 && 1002 (amending 21 U.S.C. 841(b)(1)), 1202 (inserting 21 U.S.C. 813), and 1203 (inserting definition of controlled substance analogue). This omnibus legislation included a number of legislative changes, such as the enhanced penalties for fentanyl analogues, id. at && 1201-1204. Before it was included in the House version of the 1986 Act, the House Judiciary Committee approved the Narcotic Penalties and Enforcement Act of 1986, containing language that is substantially similar to what was ultimately enacted. The House Judiciary Committee Report accompanying that legislation explained that the term "analogue of fentanyl" refers to "a controlled substance that is an analogue of fentanyl", but it "does not include fentanyl, nor does it included controlled substance analogues'. H.R. Rep. No 99-845, at 17 n.2. Given the complete silence in the statute, 21 U.S.C. 960(b)(1) (F)'s use of the phrase "any analogue of 'fentanyl'" only applies to controlled substances and not to controlled substance analogues. As the Second Circuit Court of Appeals has stated, "Because a conference report represents the final statement of terms agreed to by both houses, next to the statute itself it is the most persuasive evidence of congressional intent." Railway Labor Executive Ass'n v. ICC, 735 F.2d 691, 701 (2d Cir. 1984) It is clear from this report that it was Congress's intent to apply the enhanced penalties of 21 U.S.C. 960(b)(1)(F) to controlled substances only.

A district court in the Second Circuit has also examined this and determined that "analogue of 'fentanyl'" only applies to

TRULINCS  78867054 - OKPARAEKE, CHUKWUEMEKA - Unit: CAA-G-A

--------------------------------------------------------------------------------------------------

controlled substances. "Thus, the Committee's report demonstrates that when the statute was enacted, Congress considered the term "fentanyl analogue" to be different from the more generalized term "controlled substance analogue" even though fentanyl is a controlled substance. In other words, the legislative history shows that Congress considered a controlled substance analogue and an analogue of fentanyl  to be definitionally and conceptually different." US v. McCray, 346 F. Supp. 3d 363, 369 (2d Cir. 2018) The Seventh Circuit has also ruled that "any analogue of 'fentanyl'" and "controlled substance analogue" are different. "The problem for Johnson is that the term "controlled substance analogue" does not appear in [section] 841(b)(1) (A)(vi) where the fentanyl analogue language is, and the term is treated separate and apart from "any analogue of [fentanyl]." Congress specifically used the term "controlled substance analogue" in other sections of the statute, see 841(b)(7)(A)(vi)... Thus, "controlled substance analogue" is not the same as "any analogue of [fentanyl]." US v. Johnson, 47, F.4th 535, 2022 U.S. App. LEXIS 13-14 (7th Cir. 2022) Most weighty to this calculus is the Second Circuit ruling which  determined that "any analogue of 'fentanyl'" is different from "controlled substance analogue". "But nowhere... does the term "controlled substance analogue" appear; and where that specialized term does not appear, we have no reason to apply its specialized definition." See US v. McCray, 7 F. 4th 40, 2021 U.S. App. LEXIS 12 (2d Cir. 2021) Okparaeke's plea was inherently contrary to the Second Circuit's ruling in McCray because the Government alleged that "controlled substance analogue" was "analogue of fentanyl".

The proper statute for prosecuting the importation of a controlled substance analogue is 21 U.S.C. 960(b)(3) not 21 U.S.C. 960 (b)(1)(F). Under 21 U.S.C. 813, a "controlled substance analogue shall ... be treated, for the purpose of any Federal law as a controlled substance in schedule I". The phrase "controlled substance in schedule I" is in 21 U.S.C. 960(b)(3): "In the case of a violation under subsection (a) of this section involving a controlled substance in Schedule I ... the person committing such violation shall... be sentenced to a term of imprisonment not more than 20 years..." It is clear that Congress intended for the importation of controlled substance analogues to be prosecuted under this statute because they used the specific phrase in 21 U.S.C. 960(b)(3) and omitted it from 21 U.S.C. 960(b)(1)(F). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Russello v. US, 464 U.S. 16, 23 (1983). The Government clearly erred in this regard by offering a plea agreement with the wrong charge.

Therefore, Okparaeke is actually innocent of Count Two and could not have been guilty of committing this offense until July of 2017 when the substance became a controlled substance.

2. Okparaeke is actually innocent of Count Two because the plea allocution failed to establish that acrylfentanyl was a controlled substance analogue

Even if 21 U.S.C. 960(b)(1)(F) applied to controlled substance analogues, Okparaeke would still be innocent because the Government failed to show that the substance in question, acrylfentanyl, was a controlled substance analogue. The government simply stated that acrylfentanyl had "a substantially similar chemical and pharmacological effect of fentanyl." This statement clearly fails to establish the definition of a controlled substance analogue as set forth in 21 U.S.C. 802(32)(A). Under 21 U.S.C. 802(32)(A), a controlled substance analogue is defined as a substance:

(i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II; (ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or (iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similiar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or schedule II.

There was not an iota of evidence presented to the magistrate taking the plea about the second prong or third prong of the 21 U.S.C. 802(32)(A). No information was given about the possible stimulative, depressive or hallucinogenic effect of acrylfentanyl; there was also no indication that Okparaeke marketed acrylfentanyl consistent with the prohibitions in the third prong. Also, the government failed to establish any factual basis that acrylfentanyl had a chemical structure substantially similiar to a controlled substance in schedule I or II. All they presented was a perfunctory statement about possible testimony. The Government never presented any information about how the chemist came to this conclusion or whether the chemist had examined a diagram of the chemicals and compared them. Without this evidence, Okparaeke is clearly innocent of the charge.

When fulfilling its obligation at a plea allocution to determine whether a defendant's admitted conduct is a crime, a court is "free to rely on any facts at its disposal," including information obtained by making an "inquiry... of the attorneys for the government", as long as "the facts relied on are placed on the record at the time of the plea." US v. Maher, 108 F.3d 1513, 1524-25 (2d Cir. 1997). Rule 11 thus "requires the court to assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty" such that, "were a jury to accept [those admissions] as

TRULINCS  78867054 - OKPARAEKE, CHUKWUEMEKA - Unit: CAA-G-A

--------------------------------------------------------------------------------------------

fact ... a guilty verdict would follow." US v. Albarran, 943 F.3d 106, 121 (2d Cir. 2019) Therefore, Okparaeke is actually innocent of Count Two because there was no information that acrylfentanyl was a controlled substance analogue as described in 21 U.S.C. 802(32)(A) and no jury would have found Okparaeke guilty based on the single conclusory statement from the government.

3. Okparaeke is actually innocent of Count Two because the plea allocution failed to establish that the SDNY was the proper venue

The plea proceeding also failed to establish another important fact: that the charged importation offense occurred in the Southern District of New York. Venue for importation offenses is specifically controlled by Congress in 18 U.S.C. 3237, which provides that "any offense involving...the importation of an object... into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such...imported object move[s]." The imported object in this case, a package of acryl fentanyl, did not move from, through, or into the Southern District of New York.

As Okparaeke explained during his guilty plea proceeding, while the imported substance was "supposed to be delivered to a UPS mailbox in Middletown," a location within the SDNY, the authorities instead "did a controlled delivery. As you know probably though all your experience, law enforcement will switch the substance with like a sham substance. That's what they did in my case. They had intercepted packages like at JFK and then they had done like a controlled delivery." The airport (JFK) where the packages were intercepted is located in Queens County, which is within the Eastern District of New York. See 28 U.S.C. 112(c) ("The Eastern District comprises the counties of Kings, Nassau, Queens, Richmond and Suffolk")

Since the imported package of acryl fentanyl was intercepted in the EDNY and never transferred to any address in the SDNY (where only the sham substance was delivered), the SDNY was the improper venue for the prosecution of this offense.

Therefore Okparaeke is innocent of count two because the venue for importation into the SDNY was clearly invalid.

TRULINCS 78867054 - OKPARAEKE, CHUKWUEMEKA - Unit: CAA-G-A

---------------------------------------------------------------------------------------------

FROM: 78867054
TO:
SUBJECT: 28 U.S.C. 2255 Part 4
DATE: 05/18/2023 02:38:21 PM

4. There is not a "more serious charge" as described in Bousley

In Bousley v. US, 523 U.S. 614, 624 (1998), the Supreme Court stated, "In cases where the Government has forgone more serious charges in the course of a plea bargaining, petitioner's showing of actual innocence must also extend to those charges." In the instant case, there is not a more serious charge. The various courts of appeals have ruled the seriousness of a charge, in this context, is determined by the sentencing guideline. See U.S. v. Caso, 723 F.3d 215, 225 (D.C. 2013); Accord U.S. v. Halter, 217 F.3d 551, 553 (8th Cir. 2000); U.S. v. Lloyd, 188 F.3d 184, 189 n. 13 (3rd Cir. 1999). See generally Peugh v. U.S. 133 S.ct. 2072, 2085 (2000)

The PSI in the instant case stated that the guideline for the instant offense was offense level 39 with a criminal history category of 1. This amounted to a sentence of 262 months to 327 months. For a charge to have been more serious, it would have to be an offense level of 40. Not only is there not a more serious charge, the indictment that was dismissed was less serious because the offense level was 37, as a agreed by the parties in the plea agreement.

Therefore, there wasn't a more serious charge and Okparaeke is actually innocent of Count Two.

CONCLUSION

Okparaeke respectfully requests that Count Two be vacated or, that he be granted a certificate of appealability.

Thanks,

Chukwuemeka Okparaeke 78867054
P.O. Box 200
Canaan Prison Camp
Waymart, PA 18472

⇔78867-054⇔
Emeka Okparaeke
P.O. 200 Federal Prison Camp
Waymart, PA 18472
United States



THIS CORRESPONDENCE IS FROM AN INMATE
CURRENTLY IN THE CUSTODY OF
THE FEDERAL BUREAU OF PRISONS



⇔78867-054⇔
Nelson Roman
300 Quarropas ST
White Plains, NY 10601
United States



RECEIVED

MAY 2 4 2023

NELSON S. ROMÁN
U.S. DISTRICT JUDGE
S.D.N.Y.



TRULINCS  78867054 - OKPARAEKE, CHUKWUEMEKA - Unit: CAA-G-A

--------------------------------------------------------------------------------

FROM: 78867054
TO:
SUBJECT: Supplement to 28 U.S.C. 2255
DATE: 05/22/2023 11:20:35 AM

Nelson S. Roman
300 Quarropas Street
White Plains, NY 10601

Re: US v. Okparaeke S4 17 Cr. 225(NSR); Okparaeke v. US, 7:23-cv-3353

Dear Judge,

Please consider this to be a supplement to my most recent 28 U.S.C. 2255 motion.

5. Okparaeke's claim of innocence should be reviewed on the merits and result in the immediate vacatur of the conviction and sentence.

As the Second Circuit explained, when the "outcome was a conviction based on a plea of guilty, the appellant must show that there was a reasonable probability that, but for the error, he would not have pleaded guilty." US v. Dussard, 967 F.3d 149, 156 (2d Cir. 2020). In Bousley, the Supreme Court stated that guilty plea on count two was not intelligently made must be set aside. Bousley 523 U.S. at 618-19.

Had Okparaeke been knowledgeable about his innocence of count two he would not have pleaded guilty because:

i) The conviction of count two resulted in a minimum of five years supervised release, two more years than what he could have gotten with the rest of the charges. See Pham v. US, 317 F.3d 178, 182 (2d Cir. 2003)("[A] significant sentencing disparity in combination with defendant's statement of his intention is sufficient to support a prejudice finding.") This sentence disparity in supervised release terms clearly shows that Okparaeke wouldn't have pleaded guilty.

ii) Okparaeke attempted to withdraw his plea until the day he was sentenced. The fact that Okparaeke attempted to withdraw his plea shows that he would not have pleaded guilty had he known of the error.

iii) Okparaeke was never informed during his guilty plea that "any analogue of [fentanyl]" did not include controlled substance analogues. During Okparaeke's guilty plea, the United States Attorney never told the judge that the people could only be guilty of 21 U.S.C. 960(b)(1)(F) if they imported a controlled substance nor did the magistrate understand that this was a part of the offense. Therefore Okparaeke's plea was not intelligently made.

iiii) Okparaeke swears that under the pains and penalties of perjury that he would not have pleaded guilty had he known about the error. This shall be considered an unsworn declaration under 28 U.S.C. 1746.

Regards,

Chukwuemeka Okparaeke 78867-054
P.O. Box 200
Canaan FPC
Waymart, PA 18476







LEHIGH VALLEY PA 180

THIS CORRESPONDENCE IS FROM AN INMATE CURRENTLY IN THE CUSTODY OF THE FEDERAL BUREAU OF PRISONS

RECEIVED
MAY 2 5 2023
NELSON S. ROMAN
U.S. DISTRICT JUDGE
S.D.N.Y.

RECEIVED
MAY 2 5 2023
NELSON S. ROMAN
U.S. DISTRICT JUDGE
S.D.N.Y.

◇78867-054◇
Nelson Roman
300 Quarropas ST
White Plains, NY 10601
United States

10601-414000

◇78867-054◇
Emeka Okparaeke
P.O. 200 Federal Prison Camp
Waymart, PA 18472
United States

