UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

CHUKWUEMEKA OKPARAEKE,

        Petitioner,

        vs.

        17 Cr. 225 (S-4) (NSR)
        23 Civ. 3353 (NSR)

UNITED STATES OF AMERICA

        Defendant.
_____


# MEMORANDUM OF LAW IN SUPPORT OF CHUKWUEMEKA OKPARAEKE'S PETITION PURSUANT TO 28 U.S.C. § 2255


FLORIAN MIEDEL, ESQ.
MIEDEL & MYSLIWIEC LLP
80 Broad Street, Suite 1900
New York, NY 10004
Tel: (212) 616-3042

*Attorney for Petitioner*

A. **INTRODUCTION**

On July 31, 2023, this Court appointed me to assist Mr. Okparaeke in pursuing his petition pursuant to 28 U.S.C. § 2255. Mr. Okparaeke had filed his petition *pro se* in June 2023. The government responded to the petition on July 17, 2023 (ECF Doc. No. 237), and Mr. Okparaeke filed a *pro se* reply on August 7, 2023 (drafted on August 2, 2023) (ECF Doc. No. 248). At the time he filed his reply, Mr. Okparaeke was not yet aware that the Court had granted his request for appointed counsel to assist in the briefing. The Court has now permitted counseled supplemental briefing to be submitted on or before September 25, 2023.

As the Court knows, Mr. Okparaeke is a very intelligent individual who has thoroughly researched and presented his argument that count 2 of the indictment should be dismissed. The purpose of this submission is to streamline the issues for the Court and to assist the Court in determining whether Mr. Okparaeke's technical argument for dismissal is valid. It is not intended to replace or supplant Mr. Okparaeke's prior *pro se* submissions. For the reasons discussed below, Mr. Okparaeke is correct and count 2 should be dismissed.

B. **PROCEDURAL DEFAULT**

It is true that Mr. Okparaeke did not raise this claim on direct appeal. It is therefore procedurally defaulted unless "the defendant can first demonstrate" one of two conditions: (i) "cause'" for the default and "actual prejudice" resulting therefrom, or (ii) that the defendant is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998). Mr. Okparaeke does not seek to demonstrate cause for the default. He relies on the second prong of *Bousley* – that he is "actually innocent" of count 2. On the merits, which are discussed at length below, Mr. Okparaeke posits that he is innocent of count 2. If so, this provides a defense against a claim of procedural default. In other words, the Court must determine the merits of the claim. If the

claim fails on the merits, it is also defaulted. If it prevails on the merits, there is no procedural default.

The government raises the argument that in order to demonstrate actual innocence, the petitioner must not only demonstrate innocence of the attacked count, but also that he was innocent of more serious charges that the government abandoned during plea negotiations. *See* Gov. Response, at ECF pp. 20-21; *see also Bousley* at 624 ("in cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges."). Specifically, the government points to the fact that it agreed to dismiss count 8 of the indictment when it offered the plea agreement that Mr. Okparaeke signed, and argues that count 8 was more serious than count 2.[1] In response, Mr. Okparaeke counters that count 8 was not, in fact, more serious than count 2 and he therefore does not need to establish actual innocence of count 8.

The government argues that count 8 was more serious than count 2 because count 8 had a 20-life statutory range, whereas count 2 has a 10-life range. *See* Gov. Response at 20-21. However, the courts that have examined the question of how "more serious" is defined have uniformly concluded that the *sentencing guideline ranges* of the relevant counts are the deciding factor. *See e.g. United States v. Caso*, 723 F.3d 215, 223 (D.C. Cir. 2013) ("the appropriate measure of the seriousness of an offense must be derived from the Sentencing Guidelines rather than the statutory maximum penalty."); *United States v. Halter*, 217 F.3d 551, 553 (8th Cir. 2000) ("We are of the opinion that actual punishment as determined by the Guidelines is the proper basis for identifying the 'more serious charge'.").

The government maintains that even under a guidelines comparison count 8 would have

---

[1] Count 8 charged Mr. Okparaeke with a violation of 21 U.S.C. § 841(a)(1) – distribution of narcotics from which a death resulted.

been more serious than count 2 because due to the statutory minimum, count 8 would have had a sentence range of 240-262 months, whereas the guideline range for count 2 was 210-262 months.  *See* Gov. Response at 21.  However, the guideline for count 2 in the PSR was 262-327 months, which the Court adopted.  *See* PSR at ¶ 81, Sentencing Transcript at 29-30.[2]  The parties had reached a different guidelines calculation – 210-262 months – because both had neglected to consider a two-point enhancement for mass marketing under § 2D1.1(b)(7), which the Probation Department included.  The parties did not argue that the enhancement was incorrect or unwarranted, which is why the Court adopted the PSR and its findings.  Because the parties had agreed on the 210-262 guideline in their plea agreement, however, the Court ultimately went along with that guideline.

The fact is that the guideline ranges for counts 2 and 8 were identical.  Counts 1 and 2 were grouped together for guidelines purposes and were controlled by USSG § 2D1.1(a)(2), which called for a base offense level 38 because Mr. Okparaeke admitted that the distribution of the substances in count 1 resulted in death.  Count 8 would also have been controlled by § 2D1.1(a)(2) with a base offense level of 38 because death resulted.  With the undisputed enhancements, the adjusted offense level for all counts would have been 42.  The final offense level would have been 39, with a resulting range of 262-327 months.  Accordingly, counts 2

---

[2] "The record should reflect that the Court has adopted the presentence report, has formally accepted and adopted the presentence report. The Court adopts the factual recitation in the presentence investigation report. The presentence investigation report includes a computation that Mr. Okparaeke's criminal history falls into category I and Mr. Okparaeke's offense level amounts to 39. The guideline sentence for that offense level and criminal history category is 262 to 327 months imprisonment subject to a mandatory minimum of ten years on Count Two to be followed by three years supervised release on Count One, five years supervised release on Count Two and one to three years of supervised release on Count Three. In addition, the applicable fine range is $50,000 to $10 million. The applicable forfeiture amount in this case is $105,177.30. Restitution is to be determined by the Court. And the applicable special assessment is $300, which represents $100 per count. The Court, however, will adopt the guidelines sentence provision as agreed upon by the parties in the plea agreement, which is 210 months to 262 months." Tr. at 29-30.

and 8 were, at worst, equally serious. Since *Bousley* requires only that a petitioner establish his innocence of "more serious" charges that were abandoned by the government in plea negotiations, and Count 8 was not more serious, Mr. Okparaeke is not procedurally defaulted. *See Bousley* 523 U.S. at 624; *Johnson v. United States*, 186 F.3d 876, 878 (8th Cir. 1999) ("If the district court concludes the dismissed § 924(c) count is a *more serious charge*, then Johnson must show he is actually innocent of that charge as well and the Government is entitled to present evidence rebutting Johnson's claim.") (emphasis added).[3]

### C.     MR. OKPARAEKE IS INNOCENT OF COUNT 2

In his *pro se* filings, Mr. Okparaeke has persuasively set forth the reasons for why he is innocent of violating 21 U.S.C. § 960(b)(1)(F), the statute underlying count 2.  It is a complicated argument, however, and I will here try to restate the argument as clearly as possible.

Mr. Okparaeke pled guilty to count 2, which required him to be guilty of importing 100 grams or more of an analogue of fentanyl, in violation of 21 U.S.C. § 960(b)(1)(F).  The factual basis for that plea was Mr. Okparaeke's admission that he imported more than 100 grams of acryl fentanyl.  The parties agree that acryl fentanyl, at the time Mr. Okparaeke imported it, was not a controlled substance.  Instead, it was a "controlled substance analogue" as defined in 21 U.S.C. § 802(32).  The definition of "controlled substance analogue" excludes scheduled controlled substances.  21 U.S.C. § 960(b)(1)(F) does not prohibit the importation of controlled substance analogues.  It prohibits the importation of analogues of fentanyl.  The question for

---

[3] Mr. Okparaeke also persuasively argues that the government did not in fact forgo count 8, because the death resulting from the distribution of a controlled substance (as charged in count 8) was admitted by Mr. Okparaeke as part of counts 1, and he faced the same guidelines range as he would have if count 8 had remained in the information.  *See* Okparaeke *pro se* Reply.

the Court, therefore, is whether an analogue of fentanyl is the same as a "controlled substance analogue." The statutory history, as well as relevant analysis by the Second Circuit, make clear that the two are not synonymous.

In *United States v. McCray*, 7 F.4th 40 (2d Cir. 2021), the Second Circuit tackled the mirror image of this issue. McCray argued that the substance he possessed, butyryl fentanyl, was not an analogue of fentanyl because butyryl fentanyl was itself a scheduled controlled substance, and the definition of "controlled substance analogues" specifically excluded substances that were scheduled. McCray sought to argue that an "analogue of fentanyl," the distribution of which was prohibited by the statute he was accused of violating (21 U.S.C. § 841(b)(1)(B)(vi)) was synonymous with a "controlled substance analogue," and that therefore the definition of "controlled substance analogue" at 21 U.S.C. § 802(32) controlled. *Id.* at 46. Both the district court, and later, the Second Circuit rejected that argument, concluding that because the statute (21 U.S.C. § 841(b)(1)(B)(vi)) prohibited the distribution of an "analogue of fentanyl," not a "controlled substance analogue," and because "controlled substance analogue" had a specific, "term of art," definition created by Congress, the two were different. *Id. See also United States v. Johnson*, 47 F.4th 535, 543 (7th Cir. 2022) ("In *United States v. McCray*, 7 F.4th 40, 46 (2d Cir. 2021) the Second Circuit specifically rejected the argument that 'any analogue of [fentanyl]' should have the same definition of 'controlled substance analogue.'").[4]

The government suggests that *McCray's* analysis supports its argument that Mr. Okparaeke's claim must fail. *See* Gov. Response at 23-25. But in fact the opposite is true.

---

[4] As the *McCray* district court amusingly noted, there is some irony to the argument that an analogue of fentanyl (a controlled substance) is not a "controlled substance analogue:" "That is a conclusion only a lawyer can love. But this Court is convinced that it is the correct one, based on the science, based on the dictionary definition of analogue, and based on the fact that "controlled substance analogue" is a term of art under the statute." *United States v. McCray*, 346 F. Supp. 3d 363, 367 (W.D.N.Y. 2018).

6

*McCray's* conclusion is precisely what Mr. Okparaeke argues here: an "analogue of fentanyl," as prohibited by 21 U.S.C. § 960(b)(1)(F), is *not* a "controlled substance analogue" as defined at 21 U.S.C. § 802(32). The two are different, as *McCray* makes clear.

That difference is further supported by the legislative history. The *McCray* district court dug deeply into the legislative history of the Anti-Drug Abuse Act of 1986, which spawned all of the relevant statutes at issue here, including 21 U.S.C. § 960. *See McCray*, 346 F. Supp. 3d at 369-70. The Court stated:

> The requirement that a controlled substance analogue be treated as a controlled substance, the definition of "controlled substance analogue," and the enhanced penalty provisions applicable to fentanyl analogues all were amendments added to the Act in the Anti-Drug Abuse Act of 1986. *See* Pub. L No. 99-570 §§ 1002 (amending § 841(b)(1) ), 1202 (inserting § 813), 1203 (inserting definition of controlled substance analogue). The Anti-Drug Abuse Act of 1986 was omnibus legislation that included a number of legislative changes. *See id.* Subtitle A of the Anti-Drug Abuse Act of 1986 included the Narcotics Penalties and Enforcement Act of 1986, which added the enhanced penalties for fentanyl analogues. *See id.* at §§ 1001-1009. Subtitle E of the Anti-Drug Abuse Act of 1986 included the Controlled Substance Analogue Enforcement Act of 1986, which added the provisions regarding the treatment of "controlled substance analogues." *See id.* at §§ 1201-1204. Before it was included in the House's version of the Anti-Drug Abuse Act of 1986, the House Judiciary Committee approved a separate bill—the Narcotic Penalties and Enforcement Act of 1986—which contained language substantially similar to what was ultimately enacted as part of the Anti-Drug Abuse Act. H.R. 5394, 99th Cong., (1986). The House Judiciary Committee Report accompanying that legislation explained that the term of "fentanyl analogue" does not include fentanyl, *nor does it include controlled substance analogues* (as defined in the Designer Drug Enforcement Act of 1986) *which may be analogues of fentanyl.* H.R. REP. NO. 99-845, at 17 n.2 (emphasis added). Thus, the Committee's report demonstrates that when the statute was enacted, Congress considered the term "fentanyl analogue" to be different from the more generalized term "controlled substance analogue" even though fentanyl is a controlled substance. In other words, the legislative history shows that Congress considered a controlled substance analogue and an analogue of fentanyl to be definitionally and conceptually different.

*Id.* (emphasis in original). In other words, legislative history accompanying the creation of these statutes clarified that "controlled substance analogues" did not include "analogues of fentanyl." As Mr. Okparaeke points out, the Second Circuit has previously relied on this very

7

piece of legislative history in interpreting the Anti-Drug Abuse Act of 1986. *See* Okparaeke *pro se* Reply; *United States v. Pressley*, 469 F.3d 63, 66 (2d Cir. 2006) (citing House Judiciary Committee Report accompanying Narcotic Penalties and Enforcement Act of 1986). It is therefore entirely proper for the Court to do so here, especially when that history provides precise guidance on the very question at issue.

As set forth in the superseding information, the substance Mr. Okparaeke imported, acryl fentanyl, was a "controlled substance analogue as defined in Title 21, Unites States Code, Section 802(32)." Superseding Information, at 2-3 (ECF Doc No. 157). "Controlled substance analogue[s] *shall*, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in schedule I." 21 U.S.C. § 813 (emphasis added). The importation of "controlled substances in schedule I" are punished under 21 U.S.C. § 960(b)(3), not § (b)(1)(F).[5]

Accordingly, Mr. Okparaeke was prosecuted, and pled guilty, under the wrong statute for count 2. He is innocent of count 2 because he imported a "controlled substance analogue," not an "analogue of fentanyl," as defined in the law. The Second Circuit, as well as the statutory history, make clear that analogues of fentanyl and "controlled substances analogues" are not synonymous and are not treated the same. Because controlled substance analogues are punished as "controlled substances in schedule I" under 21 U.S.C. § 960(b)(3), not under 21 U.S.C. § 960(b)(1)(F), Mr. Okparaeke is innocent of count 2, and the conviction of that count should be vacated and the count dismissed. Furthermore, Mr. Okparaeke must be resentenced on the remaining counts. *See e.g. United States v. Binford*, 108 F.3d 723, 728 (7th Cir. 1997) ("in

---

[5] Moreover, 21 U.S.C. § 960(a)(1) only prohibits the importation or exportation of "controlled substances." Only "controlled substance analogues" are treated as controlled substances under 21 U.S.C. § 813, not other analogues that do not fit into the clear definition of "controlled substance analogues."

8

a § 2255 proceeding, the district court has the authority to restructure a defendant's entire sentence even when the prisoner's petition attacks the validity of just one of the counts of conviction.").[6]

### D.     CONCLUSION

For the reasons stated, the Court should vacate Mr. Okparaeke's conviction of count 2 of the superseding information and dismiss that count.  The Court should then hold a *de novo* resentencing on the remaining counts.

Dated: New York, New York
October 4, 2023

Respectfully Submitted

By:

   */s/ Florian Miedel*
Florian Miedel, Esq.
MIEDEL & MYSLIWIEC LLP
80 Broad Street, Suite 1900
New York, NY 10004

*Counsel for Petitioner*

---

[6] If the Court denies Mr. Okparaeke's petition, which it should not, we request that the Court issue a Certificate of Appealability.  The issues in this petition are complex and novel, and warrant consideration by the Court of Appeals.